BLACK HILLS JEWELRY MANUFACTURING CO., a South Dakota corporation; F.L. Thorpe & Company, Inc., a South Dakota corporation; and Stamper Black Hills Gold Jewelry, Inc., a South Dakota corporation, Plaintiffs and Appellants,

v.

FELCO JEWEL INDUSTRIES, INC., a corporation; South Dakota Gold Company, Inc., a South Dakota corporation; and Johnson Matthey, an international jewelry conglomerate, Defendants and Appellees.

Nos. 14002 and 14019.

BLACK HILLS JEWELRY MANUFACTURING CO., a South Dakota corporation; F.L. Thorpe & Company, Inc., a South Dakota corporation; and Stamper Black Hills Gold Jewelry, Inc., a South Dakota corporation, Plaintiffs and Appellants, .

v.

GOLD RUSH, INC., a North Dakota corporation; GRMCO, Inc., a South Dakota corporation; and Confidential Casting Corp., a corporation, Defendants and Appellees.

Nos. 14003 and 14020.

Supreme Court of South Dakota.

Argued April 18, 1983.

Decided June 29, 1983.

George A. Bangs of Bangs, McCullen, Butler, Foye & Simmons, Rapid City, for plaintiffs and appellants.

Gene N. Lebrun of Lynn, Jackson, Shultz, & Lebrun, P.C., Rapid City, for defendants and appellees.

HENDERSON, Justice.

## PROCEDURAL HISTORY

Considerable litigation underlies this action. At the outset, appellants Black Hills Jewelry Manufacturing Co., F.L. Thorpe & Company, Inc., and Stamper Black Hills Gold Jewelry (Black Hills Jewelry, Thorpe, and Stamper) brought suit in the United States District Court for the District of South Dakota, Western Division, seeking injunctive relief against appellees Gold Rush, Inc., and Felco Jewel Industries, Inc. (Gold Rush and Felco). This action culminated in a final judgment on May 1, 1980, granting a permanent injunction in favor of appellants. This judgment was affirmed upon appeal by the United States Court of Appeals for the Eighth Circuit. *Black Hills Jewelry Mfg. Co. v. LaBelle's,* 489 F.Supp. 754 (D.S.D.1980), *aff'd,* 633 F.2d 746 (8th Cir.1980). The effect of this judgment is under consideration here.

Next, appellee Felco and others brought suit against appellants in the United States District Court for the District of New Mexico. Appellants counterclaimed against Felco in the New Mexico action and instituted another action against Felco in the United States District Court, District of South Da-kota, Western Division. These actions were dismissed with prejudice as per a stipulation between the parties.

Appellants then instituted two separate actions in our state courts seeking injunctions. One action was against appellees Felco, South Dakota Gold Company, Inc., and Johnson Matthey. In this action, appellee Felco filed a motion to dismiss. Additionally, appellee South Dakota Gold Company filed a motion for judgment on the pleadings, an answer, and a counterclaim for injunctive relief and damages. Johnson Matthey was not served with process. The other action was against appellees Gold Rush, GRMCO, Inc., and Confidential Casting Corp. In this action, appellee Gold Rush counterclaimed. Also, appellees Gold Rush, GRMCO, and Confidential Casting moved for dismissal and judgment on the pleadings. Confidential Casting Corp. filed a petition for relief in Bankruptcy requesting an automatic stay of proceedings.

On November 9, 1982, the trial court entered a memorandum decision and granted appellees' motions to dismiss in both actions. Appellants filed a notice of appeal in both actions on November 30, 1982. Appellees Gold Rush and Felco filed notices of review on their dismissed counterclaims on December 10, 1982. We consolidated all of the above state court actions on January 3, 1983. We affirm.

## FACTS

In the Black Hills region of our state, appellants Black Hills Jewelry, Thorpe, and Stamper manufacture and sell distinctive, high quality, tri-color gold, grape and leaf designed jewelry. Appellants are separate, independent companies and have no contractual or licensing agreements between them. In 1978, appellee Felco, which is located in New Mexico, began manufacturing and marketing a tri-color gold, grape and leaf designed jewelry designated as "Black Hills Gold Jewelry." Appellee Gold Rush is located in Bismarck, North Dakota, and in 1978 also began marketing tri-color gold, grape and leaf designed jewelry

known as "Black Hills Gold Jewelry" and "Black Hills Gold by Gold Rush."

Appellants brought an action in the federal court system under common law and federal law to enjoin appellees Felco and Gold Rush from distributing their products as Black Hills Gold. This action resulted in issuance of an order providing in part:

[I]t is hereby

ORDERED that the Defendants, their servants, agents and employees, and all persons acting by, through or under authority of any of the Defendants are permanently enjoined from advertising, promoting, selling or offering for sale as Black Hills Gold or Black Hills Gold Jewelry, any item which is not manufactured in the Black Hills of South Dakota.

*Black Hills Jewelry Mfg. Co. v. LaBelle's,* 489 F.Supp. at 763. Additional federal litigation ensued between appellants and appellee Felco which resulted in a stipulation dismissing the actions.

After the federal litigation, appellant Black Hills Jewelry, pursuant to SDCL 37–6–10, registered trademarks with the Secretary of State of South Dakota for "Landstrom's Original Black Hills Gold Creations" and "Original Black Hills Gold Creations by Landstrom's." Additionally, appellant Black Hills Jewelry is now the owner of United States trademark Reg. No. 1,156,298 for "Landstrom's Original Black Hills Gold Creations," with a geographic disclaimer of the words "Black Hills Gold Creations" apart from the trademark as registered. Appellant Thorpe has registered a South Dakota trademark as "Original Black Hills Gold Jewelry."

Appellants next filed separate actions in our state courts alleging: (1) appellee Gold Rush was marketing its products under the title "Gold Rush Gold"; (2) appellee GRMCO, a South Dakota corporation incorporated on July 31, 1981, was assembling in the Black Hills component gold jewelry parts obtained from appellee Confidential Casting Corp. of Rhode Island, and selling the jewelry to appellee Gold Rush for distribution; (3) appellee South Dakota Gold Company, a South Dakota corporation, in-

tended to market jewelry manufactured in the Black Hills under the name "Black Hills Gold"; (4) appellee Felco intended to manufacture gold jewelry in the Black Hills; and (5) appellees' activities were designed to create confusion in the marketplace and reap the benefits of appellants' reputations and goodwill.

Appellants' petitions admit that tri-color gold, grape and leaf designed jewelry is in the public domain as it has been produced, offered for sale, and sold under names such as "Alaska Gold," "Autumn Hill," "Black Hills Gold," "California Gold," "Colorado Gold," "Cripple Creek Gold," "Dakota Gold," "49'er Gold," "Gold Rush Gold," "New Mexico Gold," "Prospector Gold," "Rocky Mountain Gold," and "Superstition Gold." Appellants' petitions also stated: "The words 'Black Hills' being geographical, are not subject to exclusive appropriation as a trademark or trade name under either State or Federal law." Appellee Felco secured a state trademark for "Authentic Black Hills Gold Jewelry." Appellee Stamper does not have a trademark but designates its jewelry as "Stamper's Genuine Black Hills Gold Jewelry."

Appellees Gold Rush and South Dakota Gold Company counterclaimed averring that appellants were monopolizing the trade or commerce of manufacturing and distribution of Black Hills Gold. Appellees also motioned to dismiss appellants' petitions which the trial court granted on the basis that the final federal order was res judicata barring this action. Appellees' counterclaims were likewise dismissed by the trial court.

## ISSUES

### I.

DOES THE FINAL DECISION IN THE EARLIER FEDERAL COURT ACTION BAR THIS STATE COURT ACTION ON THE DOCTRINE OF RES JUDICATA? WE HOLD THAT IT DOES.

## II.

DID APPELLEES' COUNTERCLAIMS, ALLEGING THAT APPELLANTS MONOPOLIZED THE TRADE OF BLACK HILLS GOLD, STATE A CLAIM UPON WHICH RELIEF COULD BE GRANTED? WE HOLD THAT THEY DID NOT.

## DECISION

### I.

Appellants contend that the federal court based its decision solely upon an application of the Lanham Trade-Mark Act, § 43(b), 15 U.S.C.A. § 1125 (1946) and therefore a common-law action for unfair competition is not barred by res judicata in our state courts.

■ The doctrine of res judicata serves as *claim* preclusion to prevent relitigation of an *issue actually litigated or which could have been properly raised and determined* in a prior action. *Matter of Estate of Nelson,* 330 N.W.2d 151 (S.D.1983); *Schmidt v. Zellmer,* 298 N.W.2d 178 (S.D.1980); *Gottschalk v. South Dakota State Real Estate Comm'n,* 264 N.W.2d 905 (S.D.1978). Of course, the earlier court must have had jurisdiction and its decision must be final and unreversed. *Keith v. Willers Truck Serv.,* 64 S.D. 274, 266 N.W. 256 (1936).

■ For the purposes of res judicata, a cause of action is comprised of the facts which give rise to, or establish, the right a party seeks to enforce. *Carr v. Preslar,* 73 S.D. 610, 47 N.W.2d 497 (1951); *Jerome v. Rust,* 23 S.D. 409, 122 N.W. 344 (1909). In *Golden v. Oahe Enterprises, Inc.,* 90 S.D. 263, 240 N.W.2d 102 (1976), we approved of the test adopted in *Hanson v. Hunt Oil Co.,* 505 F.2d 1237 (8th Cir.1974), for determining if both causes of action are the same. This test is a query into whether the wrong sought to be redressed is the same in both actions. *See also, Woodbury v. Porter,* 158 F.2d 194 (8th Cir.1946). Res judicata, which embodies the concepts of *merger* and *bar,* is therefore broader than the *issue* preclusion function of collateral estoppel. *See Palma v. Powers,* 295 F.Supp. 924 (N.D.Ill.1969).

■ Res judicata bars an attempt to relitigate a prior determined cause of action by the parties, or one of the parties in privity, to a party in the earlier suit. *Melbourn v. Benham,* 292 N.W.2d 335 (S.D. 1980). Modifying the strict privity requirement, we have held:

> In deciding who are parties for the purpose of determining the conclusiveness of prior judgments, the courts look beyond the nominal parties, and treat all those whose interests are involved in the litigation and who conduct and control the action or defense as real parties, and hold them concluded by any judgment that may be rendered.

*Schell v. Walker,* 305 N.W.2d 920, 922 (S.D. 1981). *See Carlock v. Loyd,* 43 S.D. 611, 181 N.W. 835 (1921).

■ Res judicata is premised upon two maxims: A person should not be twice vexed for the same cause and public policy is best served when litigation has a repose. *Carr v. Preslar,* 47 N.W.2d at 502–03. These maxims are served when the parties have had a fair opportunity to place their claims in the prior litigation. *Luedtke v. Koopsma,* 303 N.W.2d 112 (S.D.1981).

■ In the earlier federal action, appellants' proposed findings of fact and conclusions of law included:

10. In addition to the statutory claim above referred to (Section 43(a) of the Lanham Act), the [appellants] have a protectable common law right to be free from misappropriation and unfair competition.

19. [Appellants'] Complaint states a cause of action for unfair competition under the Lanham Trademark Act, Section 43(2), 15 U.S.C.A. § 1125(a), and [appellants] have standing under Section 43(a) to bring this action. [Appellants'] Complaint *also states a claim for unfair competition under the common law, of which this Court has pendent jurisdiction.* (Emphasis supplied.)

Although these proposed findings of fact and conclusions of law were rejected, the federal court entered the following conclusions of law:

3. In order to obtain the exclusive right to the use of the term Black Hills Gold or Black Hills Gold Jewelry, it is necessary for [appellants] to establish that they are entitled to a common law trademark.

4. In order to possess a common law trademark, [appellants] must establish that their products have acquired a secondary meaning.

5. To establish a secondary meaning, while it is not necessary to show that the public has become conscious of the personal identity of the manufacturer, it must be shown that whatever is asserted to carry the secondary meaning has come to signify origin from a single, though anonymous source.

6. In that there are three [appellants], there cannot be a single source of the product in question and [appellants] are precluded as a matter of law from establishing secondary meaning.

Appellants assert that res judicata ought not apply because they were unable to appeal from the favorable federal injunction they received. We disagree. The recent case of *Deposit Guaranty Nat'l Bank v. Roper*, 445 U.S. 326, 100 S.Ct. 1166, 63 L.Ed.2d 427 (1980), *reh'g denied*, 446 U.S. 947, 100 S.Ct. 2177, 64 L.Ed.2d 804 (1980), holds that a prevailing party may appeal an adverse ruling collateral to the judgment so long as the party retains a stake in the litigation via a case or controversy. Appellants could have appealed the unfavorable ruling as it determined appellants' ability to restrain future Black Hills manufacturers from marketing products designated as "Black Hills Gold."

We are convinced that the common law issue of unfair competition was litigated and determined in favor of appellees Felco and Gold Rush as evidenced by the federal court's conclusion that appellants were not entitled to the exclusive use of the regional title "Black Hills Gold." Our decision is not altered by appellants' claims of changed circumstances. Although appellants have registered state trademarks, they correctly concede that the geographical term "Black Hills" is not subject to appellants' exclusive appropriation under our state law. Appellants' contention that appellees are now manufacturing gold jewelry in the Black Hills ignores the fundamental point that appellants are without recourse to stop any Black Hills manufacturer or merchant from using the words "Black Hills" in the name of their products or company. This is the same alleged "wrong" appellants sought to have redressed in the federal action, namely, that appellees not call their products "Black Hills" gold.

■ We must next examine the issue of determining which litigants are covered by res judicata to make our holding definitive. Under our past decisions, there can be no doubt that appellees Felco and Gold Rush are parties protected by the prior federal decision. However, it is unclear under our past decisions if appellees GRMCO, South Dakota Gold, and Confidential Casting can be considered to be parties, or in privity with the parties in the federal litigation. *See also, Midcontinent Broadcasting Co. v. Dresser Indus.*, 486 F.Supp. 858 (D.S.D. 1980).

We stand at a juncture, unwilling to embark in an exercise of "metaphysical privity,"[1] yet faced with the uncomforting thought that our prior decisions would possibly allow appellants to litigate an identical issue against countless future competitors without any res judicata or collateral estoppel effect. As the United States Supreme Court held when it eradicated the privity requirement in defensive uses of res judicata:[2] "Permitting repeated litigation

---

1. This concept and its inherent dangers were coined in: Comment, Collateral Estoppel: The Changing Role of the Rule of Mutuality, 41 Mo.L.Rev. 521, 524 (1976).

2. A "defensive use" of res judicata is when "a defendant seeks to prevent a plaintiff from asserting a claim the plaintiff has previously litigated and lost against another defendant."

of the same issue as long as the supply of unrelated defendants holds out reflects ... the aura of the gaming table ... 'hardly a worthy or wise basis for fashioning rules of procedure.'" *Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation,* 402 U.S. 313, 329, 91 S.Ct. 1434, 1443, 28 L.Ed.2d 788, 799–800 (1971) (quoting in part *Kerotest Mfg. Co. v. C–O–Two Fire Equip. Co.,* 342 U.S. 180, 185, 72 S.Ct. 219, 222, 96 L.Ed. 200, 204 (1952)). Several generations of legal minds have questioned the illogical basis of privity (or mutuality) in res judicata reasoning.[3] These attacks on privity have borne fruit as many jurisdictions have abandoned the privity requirement in defensive settings.[4]

We now join those jurisdictions which have allowed the use of collateral estoppel or res judicata in a civil action when a new defendant affirmatively raises these defenses to bar a plaintiff from reasserting issues the plaintiff has actually previously litigated and lost on the merits against another defendant. The dismissal of appellants' claim is affirmed as for all appellees.

## II.

■ Appellees Gold Rush and South Dakota Gold assert the trial court erred in dismissing their antitrust counterclaims, the thrust of which was that appellants' legal proceedings were anticompetitive and in a restraint of trade. Appellees acknowledge the well-established *Noerr-Pennington* Doctrine[5] which generally provides that court petitions are exempt from attacks based upon the Sherman Antitrust Act. However, appellees contend that appellants' actions fall within the *Noerr-Pennington* Doctrine exception for litigation which is mere-ly a sham, and in reality an attempt to interfere with a competitor's business. *California Motor Transport Co. v. Trucking Unlimited,* 404 U.S. 508, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972).

We are unable to adopt appellees' view that appellants' litigation in state court is merely a sham. As the Tenth Circuit Court held in *Hydro-Tech Corp. v. Sundstrand Corp.,* 673 F.2d 1171, 1176–7 (10th Cir.1982) (footnote omitted):

> [T]he term "sham" means misuse or corruption of the judicial process. The filing of a lawsuit "without probable cause" and with an anticompetitive intent simply does not come up to this standard set by the Supreme Court in *California Motor Transport.*

After reviewing the settled records herein, we are convinced appellants did not misuse judicial process. *See Stauffacher v. Brother,* 67 S.D. 314, 292 N.W. 432 (1940).

Appellees' counterclaims were properly dismissed by the trial court. Because of our holdings, we need not reach appellants' remaining issues.

Affirmed.

FOSHEIM, C.J., and DUNN and MORGAN, JJ., concur.

WOLLMAN, J., concurs specially.

WOLLMAN, Justice (concurring specially).

I am gratified that we have made clear that the restrictive doctrine of mutuality should no longer be applied to bar those who were not parties, or in privity, to the earlier litigation from asserting the defens-

---

*Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 326 at n. 4, 99 S.Ct. 645, 649, 58 L.Ed.2d 552, 559 (1979).

**3.** A particularly well-reasoned attack on mutuality is found in 7 Works of Jeremy Bentham, 171 (Bowring ed. 1843). *See also* Moschzisker, "Res Judicata" 38 Yale L.J. 299 (1929).

**4.** A partial listing can be found in 18 Wright, Miller and Cooper, *Federal Practice and Procedure* § 4464 at 576 n. 13 (1981). *See also,* Annot. 31 A.L.R.3d 1044 § 4(c) (1970). As of 1980, twelve jurisdictions were listed as continuing to cling to a strict privity requirement. 18 Wright, Miller and Cooper, § 4463 at 561 n. 4 (1981).

**5.** This doctrine is a product of: *United Mine Workers v. Pennington,* 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965), and *Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.,* 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464, *reh'g denied,* 365 U.S. 875, 81 S.Ct. 899, 5 L.Ed.2d 864 (1961).

es of res judicata and collateral estoppel. Cf. *Melbourn v. Benham*, 292 N.W.2d 335, 339 n. 3 (S.D.1980); *Id.* at 339 (Wollman, J., dissenting).