**BANK OF HOVEN, a banking corporation, Plaintiff and Appellee,**

**v.**

**William RAUSCH, Defendant and Appellant.**

**Nos. 16406, 16421.**

Supreme Court of South Dakota.

Considered on Briefs Sept. 13, 1989.

Decided Dec. 13, 1989.

Laurie Bauer, Mobridge, for plaintiff and appellee.

Rick Johnson of Johnson, Eklund & Davis, Gregory, for defendant and appellant.

WUEST, Chief Justice.

Appellee, Bank of Hoven (Bank), brought an action against Appellant, William Rausch (William), seeking payment of a promissory note executed in 1981. William brought a counterclaim against the Bank alleging that the Bank's conduct toward him was in bad faith and was vitiated by fraud, deceit, intentional and negligent misrepresentation, and breach of fiduciary duty. As a result of this alleged conduct, William claimed that he suffered mental and emotional distress. After a trial by jury, a verdict was returned awarding William $117,000 in compensatory and exemplary damages, while at the same time awarding the Bank the amount of the promissory note plus interest since 1981 ($191,315.20). Judgment was entered accordingly, and William appealed. We reverse.

In April of 1978, Harlan Rausch (Harlan) sought a loan from Bank in the amount of $75,000. Bank informed Harlan that his credit was not sufficient to acquire the loan and suggested that such a loan could be obtained if Harlan's father, William, co-signed a promissory note. William agreed to co-sign the promissory note with Harlan, and on April 18, 1978, a promissory note in the amount of $75,000 was executed by William and Harlan in favor of the Bank. It was William's belief that his obligation on this loan was short-term, existing only until his son received a loan from the Farmer's Home Administration.

In May of 1979, the 1978 promissory note was cancelled and another note was issued supposedly in its place. This promissory note was for the same principal amount of $75,000, although at a higher interest rate,

and contained a signature purporting to be William's. Harlan later testified, however, that he placed William's signature on the instrument without William's knowledge. This process occurred again in 1980, 1981 and 1982. Each time the note for the prior year was cancelled, and another note was issued in the same amount but at a higher interest rate. Harlan also later admitted to forging his father's signature on these notes issued in 1980, 1981 and 1982.

In 1983, Bank brought an action against William demanding payment of the 1982 promissory note. Bank alleged that each note executed after 1978 was a renewal note which was merely an extension of the original note. In light of Harlan's admissions to forging his father's name on all of the notes executed subsequent to 1978, the Bank asserted that William effectively ratified the 1982 note by signing a security agreement in 1981 and a financial statement in 1980. These documents were allegedly signed by William to obtain further loans from the Bank. William argued that his legal obligation was terminated when the original promissory note was cancelled in 1979. A trial was held to the court and judgment was rendered in favor of the Bank. Although the trial court concluded that Harlan signed his father's name on all of the promissory notes executed subsequent to 1978, the court held William liable on the 1982 promissory note. The trial court essentially reasoned that the notes executed subsequent to 1978 were merely renewal notes, and that William's actions, primarily in 1980 and 1981, constituted a ratification of the 1982 promissory note.

William appealed this judgment in 1985 and we reversed. *Bank of Hoven v. Rausch*, 382 N.W.2d 39 (S.D.1986) (*Rausch I*). In doing so, we held that the promissory notes executed subsequent to 1978 were not renewal notes primarily because different interest rates were used for each note. As the obligations were not the same for each note, the notes could not be classified as renewal notes. We further held that William could not have ratified the 1982 note by his acts in 1980 and 1981 as these acts occurred *prior* to the execution of the

1982 note. In addition, we held that William was not precluded from denying the 1982 note. On the basis of this reasoning, we reversed the judgment of the trial court. The trial court subsequently entered a judgment in accordance with our decision.

Following this appeal, Bank then instituted another action, this time claiming that William had ratified the 1981 note by signing the 1981 security agreement and the 1980 financing statement in addition to other various documents. William then brought the aforementioned counterclaim against the Bank. William also moved the Court to dismiss the Bank's complaint on the grounds that the Bank's claim was barred by the doctrine of res judicata. The trial court denied this motion stating that the doctrine of res judicata does not apply to judgments which have been reversed. After a trial to a jury, the aforementioned verdicts now on appeal were rendered. William appeals alleging the second action is barred by the doctrine of res judicata. Also, William and the Bank allege the jury's verdict was inconsistent because it held William liable on the 1981 note, while at the same time awarding him damages for the Bank's alleged fraud, deceit, misrepresentation, and breach of fiduciary duty. Other issues were also presented to this Court, but for the purposes of this opinion, they need not be discussed.

We first direct our attention to the issue of whether the Bank's second action, after our decision in *Rausch I*, should have been barred by the doctrine of res judicata. The trial court, when presented with this issue, held that the doctrine of res judicata could not be used to bar the Bank's second action because the judgment of the trial court in the first action was reversed. In South Dakota, it is well settled that the decision upon which one may base a claim of res judicata must be final and unreversed. *Rosebud Sioux Tribe v. Strain*, 432 N.W.2d 259, 262 (S.D.1988); *Black Hills Jewelry Mfg. v. Felco Jewel Ind.*, 336 N.W.2d 153, 157 (S.D.1983). The decision upon which Rausch bases his claim of res

judicata is not the decision of the trial court in the first action, but, rather, it is our decision in *Rausch I* and the subsequent judgment entered by the trial court.

Under the present circumstances, we believe our decision in *Rausch I* should be given preclusive effect because our decision was final and, of course, unreversed. In discussing the conclusive effects given to our decisions we have stated that "whenever the circumstances are such that the cause should not be retried, this court will clearly indicate its opinion to that effect." *Raney v. Riedy*, 71 S.D. 280, 283, 23 N.W.2d 809, 810 (1946) *quoting Butler Bros. v. Mason et.al.*, 52 S.D. 349, 351, 217 N.W. 510, 511 (1928). We believe that the language used in our opinion in *Rausch I* clearly indicated the Bank's cause should not be retried. At the conclusion of our decision in *Rausch I*, we stated the following:

> We conclude there was no ratification of this 1982 note because it was not a renewal note and ratification is the affirmance by a person of a prior act, which did not bind him. As to preclusion, there is no evidence upon which the trial court could possibly find that William was equitably estopped from denying the 1982 note, as the documents relied upon by the court predated the 1982 note.

*Bank of Hoven v. Rausch*, 382 N.W.2d 39 at 43 (S.D.1986). It is clear from this statement that we had conclusively decided all of the issues presented to us on the appeal in *Rausch I*. There was nothing left for the trial court to decide. Therefore, we believe our decision in *Rausch I* represented a final judgment. Essentially, a "final judgment" is a prior adjudication of an issue that is "sufficiently firm to be accorded conclusive effect." Restatement (Second) of Judgments § 13 (1982). There can be no doubt that our decision in *Rausch I* was "sufficiently firm to be accorded conclusive effect." The same is also true of the trial court's judgment filed subsequent and pursuant to our decision in *Rausch I*. Therefore, we believe our decision should be given preclusive effect as it is both final and unreversed.

The Bank generally does not dispute that our decision in *Rausch I* was a final judgment. The Bank contends, however, this decision was a final judgment as to the 1982 note, but not as to the 1981 note. The Bank has repeatedly argued the second action (*Rausch II*) concerns the 1981 note, and as this note was not in issue in *Rausch I*, then it cannot be barred as an issue in *Rausch II* by virtue of res judicata. We disagree. In resolving this dispute, it is crucial to note the difference between collateral estoppel and res judicata. The doctrine of collateral estoppel prevents relitigation of issues actually litigated in a prior proceeding. *Schell v. Walker*, 305 N.W.2d 920, 922 (S.D.1981); *Nelson v. Hawkeye Sec. Ins. Co.*, 369 N.W.2d 379, 381 (S.D.1985). Res judicata, on the other hand, precludes relitigation of an issue actually litigated *or which could have been properly raised and determined in a prior action. Black Hills Jewelry, supra.* (Citations omitted.) Therefore, res judicata, which embodies the concepts of merger and bar, is broader than the issue preclusion function of collateral estoppel. *Id.* We cannot conclude, therefore, that simply because the 1981 note was not in issue in *Rausch I*, it cannot be barred by res judicata.

The doctrine of res judicata bars an attempt to relitigate a prior determined cause of action by the parties or one of the parties in privity to a party in the earlier suit. *Melbourn v. Benham*, 292 N.W.2d 335, 337 (S.D.1980); *Black Hills Jewelry, supra.* For the purposes of res judicata, a cause of action is comprised of the facts which give rise to, or establish, the right a party seeks to enforce. *Black Hills Jewelry, supra.* (Citations omitted). The test for determining if both causes of action are the same is a query into whether the wrong sought to be redressed is the same in both actions. *Id.* The facts involved in *Rausch I* and *II* are virtually the same. In both cases it was established that Harlan executed a number of notes to the Bank over a period of years, and forged his father's name on those notes. In both cases the Bank argues that William's alleged acts of ratification in 1980 and 1981 effectively rendered him liable for the debt incurred by his son. William's failure to pay this debt is the wrong sought to be redressed in both actions. We must conclude, therefore, the cause of action is the same in *Rausch I* and *II*. As the Bank's cause of action was determined by this Court in *Rausch I*, the Bank cannot now attempt to relitigate that same cause of action.

Res judicata is premised upon two maxims: a person should not be twice vexed for the same cause and public policy is best served when litigation has a repose. *Carr v. Preslar*, 73 S.D. 610, 47 N.W.2d 497 (1951); *Black Hills Jewelry, supra.* These maxims are served when the parties have had a fair opportunity to place their claims in the prior litigation. *Luedtke v. Koopsma*, 303 N.W.2d 112 (S.D.1981). Clearly the Bank had a fair opportunity to place its claims in *Rausch I*. Therefore, for the foregoing reasons, we conclude that the Bank's claim against William in *Rausch II* is barred by the doctrine of res judicata.

We next turn our attention to William's counterclaim in which he alleged that the Bank's conduct toward him was in bad faith and vitiated by fraud, deceit, intentional and negligent misrepresentations, and breach of fiduciary duty. In *Rausch I*, William made no such claim against the Bank. SDCL 15–6–13(a), entitled "compulsory counterclaims," states:

A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction.

According to this statute, William should have asserted this counterclaim in the first action since it arose out of the transaction or occurrence that was the subject matter of the Bank's claim. As the issues involved in this counterclaim not only could have, but should have been raised in the first action, we hold further litigation of

these issues is also barred by the doctrine of res judicata. *Black Hills Jewelry, supra.*

For the foregoing reasons, the judgment of the trial court is reversed.

MORGAN, HENDERSON and MILLER, JJ., concur.

SABERS, J., dissents.

SABERS, Justice (dissenting).

In my view, serious mistakes are being made in this case. Even though the ultimate result (a wash) appears fair at first blush, upon analysis, it is not fair and is against the law.

The first mistake is the majority's conclusion that res judicata applies as a result of the reversal in *Rausch I.* The trial court held that res judicata cannot arise from a reversed judgment. The trial court was right. The decision in *Rausch I* was never intended to prevent the Bank from asserting its claim against William Rausch for the April 1978 note of $75,000. Liability on that note appears clear and was not seriously disputed. If in fact later notes were not renewal notes as the majority claims, William's liability on that note would persist today. To permit *Rausch I* to have that effect *now* and prevent the Bank from asserting Rausch's liability for $75,000 on the 1978 note is unfair and against the law. Therefore, we should affirm the verdict in the second jury trial for the Bank against William Rausch in the amount of $75,000. Or, at a minimum, if error affected the trial

process, we should reverse and remand for a new trial on this and the next issue.

The second mistake in the majority opinion is the conclusion that the compulsory counterclaim law of SDCL 15-6-13(a) applies to Rausch's counterclaims because they "should have been raised in the first action, ... [and are] also barred by the doctrine of res judicata."

The majority fails to mention and then ignores the fact that Rausch's counterclaim did not arise *until after* the trial and judgment in *Rausch I.* Rausch's counterclaim against the Bank for fraud and deceit was based in part on his being subjected to two civil lawsuits, two criminal actions for perjury, and the consequences resulting therefrom.[*]

It is basic that one cannot be forced to assert facts or claims which do not exist. It is basic that the compulsory counterclaim law does not apply to claims which are not yet in existence. Even the statute (SDCL 15-6-13(a)) is perfectly clear.

A pleading shall state as a counterclaim any claim which *at the time of serving the pleading* the pleader has against any opposing party....

(Emphasis added). The majority cites the correct statute. They simply fail to apply it properly. Therefore, I dissent.

[*] Rausch's brief provides:

The first [criminal] trial ended with a hung jury. The charges for perjury were brought again; however, this action did not go to trial because William signed an affidavit stating that he did not remember signing the documents in question and the charge was dismissed.

During the first criminal trial, William passed out at lunch break and was taken to the hospital in an ambulance. William was transferred to Sioux Falls for treatment of a heart problem. Later, the criminal trial was continued and resulted in a hung jury. Both William [age 85] and his wife were suffering considerable distress during this time due to these legal problems. While the second criminal case was pending, William had open heart surgery. William's wife was with him at the hospital during the week before he had his surgery. While William was in the hospital recovering from open heart surgery, his wife died suddenly.
(Transcript references omitted).