**SIOUX ENTERPRISES, MINNESOTA,**
**Plaintiff/Appellant,**

v.

**TRI–STATE REFINING CO., a Trust,**
**and Robert Hoff and Linda Hoff,**
**Defendants and Appellees.**

No. 16577.

Supreme Court of South Dakota.

Considered on Briefs Oct. 17, 1989.

Decided June 6, 1990.

Rick Johnson, Johnson, Eklund & Davis, Gregory, for plaintiff/appellant.

Richard Helsper, Erickson & Helsper, P.C., Brookings, for defendants and appellees.

HENDERSON, Justice.

## PROCEDURAL HISTORY

This case concerns issues that were raised, or should have been raised, in *Tri–State Refining and Inv. Co., Inc. v. Apaloosa Co.*, 431 N.W.2d 311 (S.D.1988) (*Tri–State I*). It should be noted that after remand, we heard this case again in *Tri–State Refining and Inv. Co., Inc. v. Apaloosa Co.*, 452 N.W.2d 104 (S.D.1990).

*Tri–State I* was an action filed by Tri–State, as the real party in interest after Robert Hoff conveyed his rights to it in 1981 (*Tri–State I*, at 313). The complaint, often amended, alleged that Lorentz Opdahl (and Apaloosa, a trust he had established) was guilty of fraud, conversion of silver, breach of a lease contract, and willful interference with use of leased property. Initially Tri–State prevailed, the case was appealed to this Court in *Tri–State I*, and thereafter affirmed in part, reversed in part. The reversal was for redetermination of damages for breach of lease and recalculation of prejudgment interest.

On November 28, 1988, nineteen days after *Tri–State I* was decided, Sioux Enterprises, Minnesota (which we dub Sioux II), claiming to be successor of "Sioux Enterprises" (we denominate as Sioux I), a trust established by Lorentz Opdahl and identified in *Tri–State I*, at p. 312, as such, filed a complaint in the circuit court for Lincoln County. Named as defendants in the complaint were "Tri–State Refining Co., a trust, and Robert Hoff and Linda Hoff". Robert Hoff (Robert) is the same person involved in *Tri–State I*, and Linda Hoff

was his wife. Said complaint of Sioux II alleged that the defendants entered a sales contract with Sioux I, and, on January 3, 1980, executed a $275,000 note payable to Sioux I "after August 28, 1980, by the delivery of 13,750 troy ounces of raw silver to Sioux Enterprises" (Sioux I), and that a total of $223,339 was to be paid in installments commencing September 1, 1980, but failed to pay $121,060 due on the contract. Also, Sioux II alleges that it had not received the 13,750 ounces of silver.

On December 8, 1988, Richard Helsper, Tri–State's counsel in *Tri–State I*, filed a "Motion for Intervention by Von Hoff International, Inc.", (International) a South Dakota corporation claiming to be successor in interest of Tri–State (Tri–State had amended its articles of incorporation, on March 17, 1988, changing its name to Von Hoff International, Inc.). This same document included a *"MOTION TO DISMISS* (SDCL 15–6–12(b)) AND MOTION FOR JUDGMENT ON THE PLEADINGS (SDCL 15–6–12(c))," alleging that everything had been decided by Judge Riley Connelly and this Court in *Tri–State I*. Notice of hearing on "Motions" was part of this document, served on Sioux II's counsel. Extensive documentation from the record in *Tri–State I* accompanied the motions.

Linda Hoff (now Linda McCauliffe) filed an answer to Sioux II's complaint including a cross-claim against co-defendant claiming Robert Hoff had breached his duties as a trustee of Tri–State, converting the trust's property by incorporating its assets into Von Hoff International. She sought dismissal of Sioux II's suit and damages from Robert Hoff.

The circuit court held a hearing (of which no transcript has been provided to this Court) on January 12, 1989, at which Linda Hoff (McCauliffe) did not appear. On January 26, 1989, the court issued an order allowing International's intervention. It also ordered that International's motion judgment on the pleadings be treated as a motion for summary judgment under SDCL 15–6–12(c), and that Sioux II's complaint be dismissed on the pleadings, based upon res judicata and estoppel grounds.

## ISSUES

Sioux II now appeals, alleging that the circuit court erred in three regards:

1. The trial court lacked jurisdiction because notice of International's motions was not served on co-defendant Linda Hoff;

2. The trial court lacked jurisdiction to order judgment on the pleadings when the pleadings were not closed and Sioux II received no notice of conversion to summary judgment; and,

3. Granting summary judgment was inappropriate res judicata and collateral estoppel decisions because Tri–State's contractual debt to Sioux II was unadjudicated.

## —Holding—

We affirm.

## FACTS

The facts of this case may be gleaned from Tri–State I.

Robert Hoff (Robert) and Linda Hoff (Opdahl's daughter) married in 1973. Robert went to work for Opdahl, managing a film products business Opdahl owned. In 1978, Opdahl put his property into three trusts: Sioux I, Tri–State (plaintiff in *Tri–State I*), and Apaloosa (defendant in *Tri–State I*). In November 1979, Tri–State leased a farm which was the corpus of the Apaloosa trust. The next events, common to both *Tri–State I* and this case, are set out in *Tri–State I:*

Opdahl approached Hoff in 1980 concerning the purchase of Tri–State. In April of 1980, Opdahl and Hoff agreed upon a proposal, drawn up by Opdahl, for the sale of Tri–State. Opdahl was to receive 13,750 ounces of silver, valued at $275,000. In addition, Hoff agreed to pay a bank note owed by Tri–State before May 1, 1980. Finally, the proposal provided that Hoff was to make monthly payments over a period of ten years, beginning September 1, 1980. The proposal

indicated that these payments would cover one-half the equity of Tri–State, plus certain other equipment.

A purchase and sale agreement, modeled after the proposal, was signed by Opdahl and Hoff on August 28, 1980. The sales agreement additionally provided that Hoff would continue to pay $200 per month rent for the lease of Apaloosa and that this rent was to be included in each monthly payment over ten years.

In December 1980, Hoff moved much of the Tri–State business to Sioux Falls. In February 1981, Hoff incorporated the Tri–State business. Tri–State continued to make monthly rental payments as some of the business remained on the leased property. Shortly thereafter, Opdahl made several attempts to evict Tri–State from the Apaloosa property. Opdahl sent a notice purporting to terminate the lease agreement and engaged in numerous physical interferences the Tri–State's use of the property. When Opdahl took possession of 75% of the property in October 1981, Tri–State reduced its monthly rental payments by $100. Eventually, Tri–State abandoned the remaining equipment on the property in 1983.

Tri–State experienced financial difficulties in 1981. Hoff suspected these difficulties stemmed from internal problems and hired a private investigator. This investigation led to a 1982 confession by an employee, Nathan Clary (Clary), that he had stolen silver from Tri–State. Clary also admitted that he assisted Opdahl in removing excessive silver during 1980. It was undisputed that Opdahl received silver from Tri–State several times during the first six months of 1980. However, there was conflicting testimony concerning the amount of silver Opdahl received. Opdahl claimed that he did not even receive the amount he was entitled to under the sales agreement. In contrast, Tri–State, through its witnesses Clary and Paul East (East), a certified public accountant who reviewed Tri–State's financial records, claimed the amount received by Opdahl greatly exceeded what he was entitled to under the contract. This testimony indicated Opdahl received nearly $1,000,000 in silver. Tri–State sued Apaloosa and Opdahl in 1984. The complaint alleged damages for breach of the lease contract and willful interference with Tri–State's use of the leased property. In 1986, Tri–State amended its complaint to include a claim for conversion of silver by Opdahl and his agents. After the close of the evidence at trial, the trial court permitted Tri–State to again amend its complaint to include an action for fraud and deceit. The trial court awarded Tri–State damages of $210,000 for fraud, $544,682.14 in prejudgment interest, and $13,400 for breach of the Apaloosa lease. The trial court also imposed sanctions of $5,500 on Opdahl.

*Tri–State I*, 312–3.

## DECISION

I. *The trial court had jurisdiction to hear and enter its rulings on Von Hoff International's motions, regardless of the fact that the motions had not been served on Linda Hoff.*

█ When Robert Hoff and Tri–State Refining Company, Inc. brought their motions to intervene, to dismiss, and for judgment on the pleadings, no notice of motions was served upon Linda pursuant to SDCL 15–6–5(a).[1]

Although there was a technical failure to comply with the service statute, we hold that the trial court did have jurisdiction to hear and enter its rulings on these motions. Sioux II was properly served with the notice of motion of intervention and is in no position to complain. It is attempting to present this issue on appeal when Linda is the only party with standing to do so. "The right of appeal is limited to a party aggrieved." *Olesen v. Snyder,* 249

---

**1.** SDCL 15–6–5(a) provides, in part, "every pleading subsequent to the original Complaint unless the court otherwise orders because of numerous defendants, every written Motion other than one which may be heard ex parte, and every written notice, appearance, demand, offer of judgment and similar papers shall be served upon each of the parties."

N.W.2d 266, 269 (S.D.1976). Sioux II was not aggrieved or prejudiced by Linda not receiving the notice of motions filed by Von Hoff International. The record does not reflect that Linda objected to or disputes in any manner the disposition by the trial court and she has further elected to not participate in these appeal proceedings. Further, Sioux II had full knowledge of the motions and the hearing and was present at the hearing through counsel.

II. *The trial court properly treated Von Hoff International's motion for judgment on the pleadings as one for summary judgment.*

*Schaub by Schaub v. Moerke*, 338 N.W.2d 109 (S.D.1983) appears to govern this issue. In *Schaub*, the plaintiffs filed a complaint against the City of Aberdeen and a fire truck driver. The trial court treated the defendants' motions to dismiss based on the doctrine of sovereign immunity. *Schaub*, at 110. The court converted the defendant's motions into motions for summary judgment "without providing notice and opportunity to present material in opposition." *Id.* This Court held that this act was in violation of SDCL 15–6–12(b), requiring reversal of the summary judgment regarding the driver, but affirmed the dismissal as to the city, as the suit was barred by sovereign immunity. Here, it is apparent that Sioux II's suit is a rehash of matters which were at issue, or should have been raised in *Tri–State I*. The procedural gaffe, under SDCL 15–6–12(b), was ignored in *Schaub* due to the sovereign immunity ruling. Here, too, we must ignore any alleged procedural gaffe because no record was made of the hearing pertaining to the conversion to a summary judgment status. Thus, meaningful review is precluded. As the party claiming error, Appellant has the responsibility to insure that a record was made. SDCL 15–26A–48; *Matter of C.M.*, 417 N.W.2d 887 (S.D.1988).

III. *The trial court properly granted summary judgment based upon res judicata and collateral estoppel.*

■ The facts set out above, in excerpts from *Tri–State I*, establish that the note for $275,000 was paid to Opdahl/Apaloosa, and thus were part of the facts underlying Tri–State's fraud claim. The matter of the silver was fully litigated, as is obvious from *Tri–State I*.

As the note and contract were the factual/legal subjects of *Tri–State I*, they should be barred by res judicata. Liability between Opdahl and Tri–State was decided in *Tri–State I*. In *Tri–State I*, the circuit court found that the note was paid, and this Court observed that the evidence supported that finding. *Tri–State I*, at 314. Further, Opdahl argued in *Tri–State I* that he still owned Tri–State, alleging that the sale contract was insufficient to transfer ownership in light of the August 1980 sales contract, at issue here. The trial court also found, in *Tri–State I*, that Opdahl's claimed transfer of his rights to his various trusts including Sioux I to be fraudulent. This finding was not disturbed on appeal. Sioux II itself filed a motion to intervene in *Tri–State I*, but withdrew its motion. The trial court entered pertinent findings as to Sioux II and all alleged trust entities. In a word, the trusts are fraudulently conceived. As *Tri–State I* resulted in holdings that Opdahl had committed fraud and stolen silver more valuable than what he claimed was due, this claim by his so-called "successor," Sioux II, is for funds and silver he has already received. Sioux II, in actuality, has no independent existence.

"The doctrine of res judicata serves as claim preclusion to prevent relitigation of an issue actually litigated or which could have been properly raised and determined in a prior action." *Hahne v. Hahne*, 444 N.W.2d 360, 362–3 (S.D.1989) (quoting *Black Hills Jewelry Mfg. Co. v. Felco Jewel Industries, Inc.*, 336 N.W.2d 153, 157 (S.D.1983)). "For the purposes of res judicata, a cause of action is comprised of the facts which give rise to, or establish, the rights a party seeks to enforce." *Hahne, id.* The contract Sioux II (Opdahl) is trying to enforce was the subject of Tri–State's fraud action against Opdahl/Apaloosa (*Tri–State I*).[2] If Tri–State's payments stopped, fraud is the reason.

---

**2.** Contrary to the special concurrence, the "how or why res judicata application" is specifically

## SUMMARY

As the claims here are a legal rehash of *Tri–State I*, there is no chance that Sioux II can prevail—all is settled. As Sioux II does not prevail, any supposed error under SDCL 15–6–12(b) regarding notice which we have rejected out of hand, cannot affect it.

Sioux's argument that failure to serve notice on Linda was error is a red herring. She did not appeal the decision, and any harm to her is irrelevant to Sioux II's claim. Sioux II has no interest in the money or silver allegedly due, because *Tri–State I* clearly establishes that Opdahl's transfers to that entity were void, and that Opdahl received more than that to which he was entitled.

Lastly, we take judicial notice that this lawsuit was commenced as follows: Summons dated November 3, 1988; Complaint dated October 31, 1988. Both of these documents were filed with the Clerk of Lincoln County on November 28, 1988, exactly 19 days *after* our decision was rendered in *Tri–State I*. No proof of service can be found in the record so the date the Summons and Complaint were served is unknown.

Affirmed.

WUEST, C.J., concurs.

MORGAN, SABERS and MILLER, JJ., concur specially.

SABERS, Justice (concurring specially).

Although I agree with the end result of the majority opinion, it fails to explain *how or why* res judicata applies in Issue III.

This is a continuing battle between the seller and the buyer of the Tri–State business. Buyer agreed to purchase the Tri–State business and pay Seller three things:

1. Opdahl was to receive 13,750 ounces of silver, valued at $275,000.

2. In addition, Hoff agreed to pay a bank note owed by Tri–State before May 1, 1980.

3. Finally, the proposal provided that Hoff was to make monthly payments over a period of ten years, beginning September 1, 1980. The proposal indicated that these payments would cover one-half the equity of Tri–State, plus certain other equipment.

*Tri–State Ref. and Inv. Co., Inc. v. Apaloosa Co.*, 431 N.W.2d 311, 312 (S.D.1988) (*Tri–State I*). *Tri–State I* specifically addressed and resolved parts 1 and 2, except only for the remand for redetermination of damages for breach of lease and recalculation of prejudgment interest. *Id.* at 317. However, the monthly payments required in part 3 were not litigated in *Tri–State I*. Consequently, res judicata will bar a claim for the payments due under part 3 only if the claim should have been properly raised as a counterclaim in *Tri–State I*.

On November 28, 1988, after remand of *Tri–State I*, Seller's successor (Sioux II) sued Buyer and Buyer's successors on part 3 claiming "that a total of $223,339 was to be paid in installments commencing September 1, 1980, but [Buyer] failed to pay $121,060 due on the contract." Sioux II argues that this is not a compulsory counterclaim that should have been raised in *Tri–State I* because the installment payments were current at the commencement of that lawsuit. Sioux II is partially correct in its argument because *Tri–State I* was commenced in 1984 and the installment payments did not stop until June of 1986.

SDCL 15–6–13(a) specifies that:

A pleading shall state as a counterclaim any claim which *at the time of serving the pleading* the pleader has against any opposing party,

(emphasis added). We have interpreted this rule to mean that "a party need not assert a counterclaim that has not matured at the time he serves his pleading." *Staab v. Skoglund*, 89 S.D. 470, 478, 234 N.W.2d 45, 49 (1975). Moreover, res judicata may not bar a claim that is not a compulsory counterclaim because it arose after the

set forth herein, i.e., the note and contract were the factual/legal subjects heretofore fully adjudicated. By trying to play a shell game with shell trusts, Opdahl is seeking to retry a previously lost battle. As set forth in the procedural history, Opdahl just 19 days after *Tri–State I* was decided, used a new phony trust and filed a complaint spawning this litigation and appeal. A special concurrence apparently would require a further and useless analysis of the obvious.

pleadings were served. *Dillard v. Security Pacific Brokers, Inc.,* 835 F.2d 607 (5th Cir.1988).

Although *Tri–State I* was commenced in 1984, we must look to the dates when the *pleadings* were served to determine whether a counterclaim had matured and was compulsory. An answer to a complaint is part of the pleadings. SDCL 15–6–7(a). Opdahl and Sioux Enterprises served an answer to Tri–State's amended complaint on September 3, 1986. Tri–State had ceased making the installment payments three months earlier, and the amended complaint implied Tri–State had no intention of resuming payment. Tri–State's claim that Seller breached the purchase and sale agreement by converting over $150,-000 of Tri–State's silver was sufficient notice that the entire agreement was in dispute and Seller should raise all of its claims against Tri–State. Therefore, the claim against Tri–State had matured when the answer to the amended complaint was served, making the claim a compulsory counterclaim now barred by res judicata. SDCL 15–6–13(a).

I am authorized to state that Justice MORGAN and Justice MILLER join this special writing.