Henry W. LEWTON and Mary E.
Lewton, Plaintiffs and
Appellants,

v.

Charles H. McCAULEY, Defendant
and Appellee.

Nos. 16813, 16846.

Supreme Court of South Dakota.

Considered on Briefs May 22, 1990.

Decided Aug. 29, 1990.

Rodney C. Lefholz, Rapid City, for plaintiffs and appellants.

Jeffrey P. Maks, Finch, Viken, Viken & Pechota, Rapid City, for defendant and appellee.

HENDERSON, Justice.

### PROCEDURAL HISTORY/ISSUES

This is an action to recover amounts purportedly due and owing to Henry and Mary Lewton (the Lewtons) for the care and pasturage of cattle belonging to Charles McCauley (McCauley). Procedural history involves the Federal Bankruptcy Court, Federal District Court and the Eighth Circuit Court of Appeals which is set forth below. The civil action in circuit court was commenced by service of Summons and Complaint upon McCauley on December 16, 1987. Lewtons also sought compensation for bull pasturage and the supply of bulls necessary to service these cattle. McCauley submitted an answer and counterclaim in this matter on January 14, 1988. In his

answer and counterclaim, McCauley asserted the fact that a previous agreement existing between the parties had been effectively terminated on October 22, 1986, and that subsequently, McCauley had paid substantial amounts of money far in excess of the fair market value of those services provided by the Lewtons. McCauley additionally asserted a cause of action for damages sustained by virtue of death loss to cattle and poor calf production while subject to the care and control of the Lewtons. Lewtons served their reply on January 20, 1988. This action was tried to the court on August 11, 1988. Judgment was entered on June 23, 1989. On appeal, the Lewtons allege:

(1) The trial court erred in not awarding monthly cattle pasture rental amount consistent with the Stay of Execution ordered by the Federal District Court; and

(2) The trial court erred in granting costs to McCauley after granting judgment in their favor.

By Notice of Review, McCauley argues that the trial court improperly determined the reasonable rental rate and thus, the amounts due and owing for the rent and pasturage of his cattle.

We affirm in part, reverse in part.

### FACTS

Lewton has pastured cattle owned by others for 24 years. He furnishes pasture during the summer months and necessary hay and feed during the winter. For this arrangement, Lewton either receives a dollar amount per cow/calf unit or a split of the calf production.

In 1982 Gordon Dihle (Dihle) placed approximately 200 head of cattle on the Lewton ranch on behalf of Gordon Gudvangen. The verbal agreement between Dihle and Lewton called for payment of $18.33 per month for each cow/calf unit or $220.00 per year.

On December 30, 1984, these 200 cattle were sold to McCauley at a price of $520 per head. At the time of this purchase, the cattle were still being pastured on the Lewton ranch. McCauley continued to pay the rate specified within the previous cattle maintenance agreement until October of 1986 when he submitted to the Lewtons notice of his termination of the verbal cattle maintenance agreement.

Prior to the cattle being sold to McCauley, the Lewtons filed for relief under Chapter 11 of the Federal Bankruptcy Laws. As part of their restructuring, the Lewtons Chapter 11 plan called for McCauley's cattle to remain on the Lewton ranch and for the Lewtons to continue to receive $18.33 per head per month. McCauley asked the Bankruptcy Court for an Order allowing him to remove the cattle. The Bankruptcy Court denied McCauley's request in June 1987. This decision was appealed by McCauley to the Federal District Court which subsequently reversed the decision of the Bankruptcy Court on September 1, 1987.

The decision of the Federal District Court was then appealed by Lewtons to the Eighth Circuit Court of Appeals. Within those appeal proceedings, the Lewtons moved the Federal District Court for a stay of execution to preclude McCauley from removing his cattle. The Federal District Court granted this stay of execution.

In July 1988, the Eighth Circuit Court of Appeals ruled that the cattle care agreement between the two parties was on a year-to-year basis and therefore could be cancelled by McCauley. The Appeals Court lifted the stay of execution and permitted McCauley to remove his cattle. Lewtons then brought this action to recover payment for the time the cattle stayed on the Lewton ranch pursuant to the District Court's stay of execution.

The trial court determined that the Federal District Court's stay of execution did not determine the monthly amount due from McCauley to the Lewtons. Rather, the trial court held that this monthly amount was to be determined by the fair market rate for such cattle pasture rent. Therein, lie the heart of this lawsuit and appeal.

To determine the market rate for cattle pasture, McCauley called Daniel Oedekoven (Oedekoven) as an expert witness. Oe-

dekoven testified that for 1986, the average cost of caring for a range animal unit (cow and calf pair) was $239.77 per year. After subtracting various expenses from that figure, the trial court determined that $187.40 per year or $15.62 per month is the cost for caring for a cow/calf pair.

For 1987, the expert testified that the average cost of caring for a range animal unit was $211.16 per year. From this amount the trial court subtracted various expenses. A figure of $161.70 per year or $13.48 per month was left as the cost of caring for a cow/calf pair in 1987.

This same figure of $161.70 per year or $13.48 per month as the cost of caring for a cow/calf pair, was used by the trial court for the year 1988.

As to the counterclaims of McCauley, the trial court held in favor of McCauley and ruled that McCauley had sustained damage for a nine cow shortage, a calf crop shortage for 1987 and a calf crop shortage for 1988. Also, the trial court ruled in favor of McCauley on his claim for expenses incurred in a calf sale. The trial court allowed the Lewtons partial recovery on their claim for bull pasturage.

## DECISION

1. *The trial court correctly exercised its jurisdiction to hear and determine the amounts due for the rent and pasturage of McCauley's cattle.*

Lewtons argue that the trial court should not have considered the monthly amount to be paid by McCauley to them for each cow/calf pair. They assert that this monthly amount was previously litigated and decided by the Federal District Court when that Court ordered its stay of execution requiring McCauley to keep his cattle with the Lewtons. Because of this prior federal litigation, McCauley contends the circuit court was precluded by both collateral estoppel and res judicata from relitigating the $18.33 per month per cow/calf unit amount. We disagree.

■ We stated in *Bank of Hoven v. William Rausch,* 449 N.W.2d 263 (S.D.1989) that the doctrine of collateral estoppel prevents relitigation of issues actually litigated in a prior proceeding. Accord: *Nelson v. Hawkeye Sec. Ins. Co.,* 369 N.W.2d 379 (S.D.1985); *Schell v. Walker,* 305 N.W.2d 920 (S.D.1981). In the present case, Lewtons argue that a result of the prior federal proceedings was the determination that McCauley was to continue to pay the contract rate of compensation for the care and pasturage of McCauley's cattle, despite the contract's termination in October of 1986. After a review of the federal litigation, we find no basis for collateral estoppel.

Prior federal litigation, as mentioned above, demonstrates clearly that the issue of specific rent amounts for cow/calf pair, was neither litigated nor presented to the federal courts. The issues confronting the Federal Bankruptcy Court, the Federal District Court and the United States Eighth Circuit Court of Appeals involved the construction validity and enforceability of the parties' previous cattle maintenance agreement. Specifically, was the agreement a year to year contract, terminable at the option of either party? Nowhere in the record was a determination made of what amounts were due for compensation or rent for the care and pasturage of McCauley's cattle after the termination of the agreement.

■ Lewtons further argue that the doctrine of res judicata applies, precluding McCauley from relitigating the $18.33 per month per cow/calf unit amount. Res judicata precludes relitigation of an issue actually litigated or which could have been properly raised and determined in a prior action between the parties. *Black Hills Jewelry Mfg. v. Felco Jewel Ind.,* 336 N.W.2d 153 (S.D.1983). Res judicata is broader than the issue preclusion function of collateral estoppel. *Bank of Hoven* at 265–66.

In the interest of not interpreting the doctrine of res judicata too broadly, which we should not, we believe the issue of rent amounts was not an issue which could have been properly raised in the prior federal proceedings. We have the same parties before us but an entirely different issue created by different facts.

■ It has been explicitly recognized that in the context of applying the doctrine of res judicata, "a cause of action is comprised of the facts which establish or give rise to the right a party seeks to enforce." *Schell,* at 922, 923. Essentially, it is the underlying facts which give rise to the cause of action that must determine the propriety or necessity of presenting a specific issue within the prior proceedings.

■ The underlying facts, which give rise to the present dispute concerning rent amounts, did not exist at the time the parties' previous contract was terminated at the time federal litigation was initiated concerning that termination. The underlying facts and issues presented within the federal litigation concerned the validity and duration of the contract for pasturage, as well as the propriety of the removal of cattle, upon the purported termination of the parties' cattle maintenance agreement. The issues involved in these proceedings concern the determination of rental rates following the termination of the parties' agreement while the propriety of the contract termination was still being addressed and reviewed by the federal courts. The facts which underlie many of the issues in these proceedings did not arise until McCauley's cattle were ultimately removed upon the Eighth Circuit's affirmance of the Federal District Court. Therefore, the doctrines of res judicata and collateral estoppel do not apply.

2. *The trial court erred in granting costs to the McCauleys.*

Lewtons submit that the trial court erred in granting costs to McCauley. As authority, they cite SDCL 15–17–11(4) which states:

Costs shall be allowed of course to the plaintiff upon a recovery in the following cases:

(1) In an action for the recovery of real property or when a claim of title to real property arises on the pleadings or is certified by the court to have come in question at the trial;

(2) In an action to recover the possession of personal property;

(3) In an action of which a magistrate court has no jurisdiction;

(4) In an action for the recovery of money where the plaintiff shall recover fifty dollars.

Actions for the recovery of money within the meaning of SDCL 15–17–11(4) are actions in which the plaintiff recovers costs, as a matter of course, if he recovers $50.00 or more, and in which he must pay them, as a matter of course, if he recovers less. *Pyle v. Hand County,* 1 S.D. 385, 47 N.W. 401 (1890).

[5] After a thorough review of the judgment entered by the trial court, we are of the opinion that the Lewtons are the prevailing party in this action. The prevailing party is the party in whose favor the decision is or should be rendered and judgment entered. *City of Aberdeen v. Lutgen,* 273 N.W.2d 183 (S.D.1979). Lewtons received judgment from the McCauleys in the sum of $56,607.48. McCauleys received judgment on their counterclaim, offsetting the judgment of Lewtons in the sum of $49,596.59. By applying the offset of the McCauleys' recovery on the counterclaim as a credit against the Lewtons' recovery on the complaint, the Lewtons are entitled to a judgment against the McCauleys in the sum of $7,010.89. This sum is more than the $50.00 required by SDCL 15–17–11(4). Therefore, the Lewtons are entitled to costs.

However, since it is not this Court's responsibility to tax costs in the lower court, which lower court should initially act upon, we remand to the trial court for this very purpose. SDCL 15–17–27 and 15–6–54(d).

*Notice of Review # 16846*

The trial court properly determined the reasonable rental rate due the Lewtons from McCauley.

Based upon the termination of the parties' previous cattle maintenance agreement, the trial court determined that the amounts due and owing for the pasturage of McCauley's cattle would be a figure premised upon the reasonable value of services rendered:

The request that the measure of damages be based upon the original contract entered into by the parties is denied. The measure of damages utilized by the Court will be reasonable rental value and the court takes judicial notice of the holding of the district court and that of the— U.S. District Court, Judge Battey, presiding, that October 22, 1986, was the termination date on the original contract of the parties and will apply reasonable rental value from that date.

McCauley argues that although the trial court correctly determined that the measure of compensation to be paid centers upon the reasonable value of the care and pasturage, the trial court incorrectly determined the exact amount of pasture rental. He submits that the trial court's actual determination of "reasonable rental rate" was not supported by the record and in view of the testimony and evidence presented at the trial level, contends that the trial court's findings were clearly erroneous.

■ Our standard of review for this action is to uphold the trial court unless its findings are clearly "erroneous." SDCL 15–6–52(a). "A finding is 'clearly erroneous' when after reviewing all of the evidence we are left with a definite and firm conviction that a mistake was made." *In re Estate of Hobelsberger*, 85 S.D. 282, 181 N.W.2d 455 (1970).

To determine the reasonable rental value for cattle pasture, McCauley's expert witness in farm and ranch management, Oedekoven, testified from studies of pasture rental in 1986 and 1987 for the area containing the Lewtons' ranch.

Oedekoven testified that for 1986 the average cost of caring for a range animal unit such as on the Lewton ranch, was $239.77 per year. From this amount, the trial court subtracted $11.55 per year for the cost of miscellaneous livestock expenses; veterinary expenses; custom hauling, grinding, marketing; and special hired labor. The trial court subtracted another $26.35 per year for power and machinery; livestock equipment costs; and building and fences. Also, the trial court subtract-

ed $27.33 per year for interest allocation. The trial court then added $9.18 per year for utilities and other general farm expense. This left a figure of $187.40 per year or $15.62 per month as the cost for caring for a cow/calf pair.

For 1987, Oedekoven testified that the average cost of caring for a range animal unit was $211.16 per year. From this amount the trial court subtracted $21.48 for miscellaneous livestock expense; veterinary expense; custom hauling, grinding and marketing; special hired labor. The trial court subtracted another $16.14 for power and machinery costs; livestock equipment costs; and buildings and fences. Also, the trial court subtracted $22.59 for interest allocation. The trial court then added $10.91 per year for utilities and other general farm expenses. This left a figure for 1987 of $161.70 per year or $13.48 per month as the cost of caring for a cow/calf pair.

The figure $161.70 per year or $13.48 per month as the cost of caring for a cow/calf pair was also used by the trial court for the year 1988.

We find no error in the trial court's findings. The trial court, when sitting without a jury, is the sole judge of the credibility of witnesses and may accept all or only part of any witness' testimony. *Nicolaus v. Deming*, 139 N.W.2d 875 (1966). The trial court's detailed memorandum of law indicated that it placed great emphasis upon Oedekoven's testimony. Therefore, having conducted a review of the entire record, we are not left with a firm and definite conviction that a mistake has been made and this Court will not substitute its judgment for that of the trial court.

Affirmed in part, reversed in part and remanded.

WUEST, C.J., and MORGAN and MILLER, JJ., concur.

SABERS, J., concurring specially.

SABERS, Justice (concurring specially).

I write specially to point out that: By distinguishing this case from *Bank of Ho-*

*ven v. Rausch,* 449 N.W.2d 263 (S.D.1989) and *Black Hills Jewelry Mfg. v. Felco Jewel Ind.,* 336 N.W.2d 153 (S.D.1983), we are avoiding the "serious mistakes" described in *Bank of Hoven,* 449 N.W.2d at 267 (Sabers, J., dissenting), and the "excessive use of res judicata" referred to in my special writing in *Bruntz v. Rutherford,* 451 N.W.2d 290, 293 (S.D.1990) (Sabers, J., concurring specially) as joined by Justice Miller. *See also* my special concurrence in *Sioux Enterprises v. Tri-State Refining,* 456 N.W.2d 774 (S.D.1990) as joined by Justices Morgan and Miller. I agree with this writing and with the statement that "we should not" "interpret[ ] the doctrine of res judicata too broadly."