**SDDS, INC., a South Dakota corporation, Appellant,**

v.

**STATE OF SOUTH DAKOTA; Mark W. Barnett, Attorney General of the State of South Dakota; George S. Mickelson, Governor of the State of South Dakota; Joyce Hazeltine, Secretary of State of the State of South Dakota, Appellees.**

No. 92–1898.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 18, 1992.

Decided June 1, 1993.

Marcy G. Glenn of Denver, CO, argued (William Murane, Charles Johnson, and William Mooz, Jr., Denver, CO, Marvin Truhe and Dale Cockrell, Rapid City, SD, on the brief), for appellant.

Diane M. Best, Asst. Atty. Gen., Pierre, SD, argued (Roxanne Giedd and Charles McGuigan, Asst. Attys. Gen., on the brief), for appellees.

Before MAGILL, Circuit Judge, HEANEY, Senior Circuit Judge, and BEAM, Circuit Judge.

MAGILL, Circuit Judge.

This case involves the dispute surrounding the construction and operation of a waste disposal facility in South Dakota. South Dakota Disposal Systems, Inc., (SDDS) appeals the decision of the district court granting a judgment of dismissal in favor of the appellees (hereinafter collectively referred to as the State). The district court held that SDDS's present constitutional challenges in federal court were precluded under the doctrine of collateral estoppel by a judgment rendered in the South Dakota state courts.

We hold that collateral estoppel does not act to preclude SDDS's present actions. We reverse the judgment of the district court and remand for further proceedings.

## I.

For the past four and one-half years, SDDS has been seeking to construct and operate a municipal solid waste (MSW) disposal facility near Edgemont, South Dakota, to be known as the Lonetree facility. Lonetree was to be a massive, state-of-the-art disposal facility which would dwarf any existing solid waste disposal site in South Dakota. The Lonetree facility anticipated importing approximately ninety percent of the MSW it would process from states other than South Dakota. The Lonetree project has been very controversial in South Dakota arousing much environmental and economic concern among politicians and citizens. There have already been extensive administrative and state court proceedings in South Dakota, some of which bear on this court's opinion and many of which do not. We offer a concise recap of the relevant procedural history up to this point.

### A. Background

South Dakota law requires anyone who seeks to establish and operate a solid waste facility to obtain a permit. S.D.Codified Laws Ann. §§ 34A–6–1.4, –1.13 (1992). The permits are initially valid for one year and may be renewed for periods of five years. S.D.Codified Laws Ann. § 34A–6–1.16 (1992). In November 1988, SDDS filed its application with the Department of Water and Natural Resources for an initial one-year permit. The Board of Minerals and Environment (BME) issued SDDS a one-year permit on September 7, 1989 (the One–Year Permit). The One–Year Permit allowed SDDS to construct and operate the Lonetree facility and to dispose of 300,000 tons of MSW. The One–Year Permit was to expire in September of 1990.

After the One–Year Permit issued in September 1989, an environmental group now known as ACTion for the Environment (ACT), which opposed the Lonetree project,

began collecting signatures to place an initiated measure (the Initiated Measure), which would require legislative approval of large-scale solid waste disposal facilities, on the ballot of the 1990 South Dakota general election. The Initiated Measure ultimately did appear on the November 6, 1990, South Dakota ballot.[1] The voters approved the Initiated Measure, it became effective November 21, 1990, and it is codified at S.D.Codified Laws Ann. §§ 34A–6–53 to –56 (1992).

By its terms, the Initiated Measure required SDDS to immediately stop the construction of the Lonetree facility. On November 7, 1990, SDDS halted all construction activity at the Lonetree site and terminated its entire work force. SDDS had expended approximately $5 million as of that time on the Lonetree facility and related activities.

Prior to the expiration of its One–Year Permit, SDDS applied for a five-year renewal of that permit (the Five–Year Permit Renewal). At the time the One–Year Permit expired, and at the time the Initiated Measure became law and SDDS laid off its work force, the BME had yet to rule on SDDS's pending renewal application. SDDS, however, had the right to continue to operate under the One–Year Permit, as allowed by S.D.Codified Laws Ann. § 1–26–28 (1992), until the BME acted on the application. Ultimately, the BME did approve the Five–Year Permit Renewal on December 7, 1990. The Five–Year Permit Renewal allowed SDDS to dispose of 7,775,000 tons of MSW at the Lonetree site.

In February 1991, the South Dakota legislature, acting pursuant to the requirements of the Initiated Measure, found that the Lonetree facility was environmentally safe and in the public interest. The legislature passed Senate Bill 169 (S.B. 169), now codified at S.D.Codified Laws Ann. § 34A–6–57 (1992), which approved the siting, construction and operation of the Lonetree facility subject to the terms and conditions of the One–Year Permit and the Five–Year Permit Renewal. The governor of South Dakota signed S.B. 169 into law on February 28, 1991.

Following the passage of S.B. 169, ACT collected signatures to refer the new law to a vote of the public at the next general election (the Referendum).[2] The effective date of S.B. 169 was suspended by the filing of the petition seeking the Referendum. The Referendum appeared on the ballot for the 1992 general election and essentially asked the citizens whether they wished to approve S.B. 169. In the general election of November 3, 1992, the majority of those voting voted against S.B. 169. S.B. 169 was, therefore, effectively vetoed by the citizens of South Dakota and the Lonetree project has been unable to proceed since.

## B. *SDDS III*

In December 1990, SDDS filed an action in state court which has become known to the litigants, and will be referred to in this opinion, as *SDDS III*. The preclusive effect of the *SDDS III* case is the specific issue which this court now decides.

*SDDS III* was a declaratory action filed by SDDS seeking judicial review of the constitutionality of the Initiated Measure. SDDS signed its first amended complaint in *SDDS III* on December 7, 1990, the very day that the BME approved its Five–Year Permit Renewal. This first amended complaint was filed in the South Dakota Circuit Court, Sixth Judicial Circuit, Hughes County, on December 10, 1990. The complaint alleges due

---

1. The Initiated Measure read in relevant part:

 Section 1. No large-scale solid waste facility may be sited, constructed or operated in this state unless the Legislature enacts a bill approving the siting, construction or operation of such facility pursuant to a solid waste permit or permit renewals, issued by the board of minerals and environment. The Legislature must find that the facility is environmentally safe and in the public interest.
 Section 2. A large-scale solid waste facility is any single facility, or two or more facilities operated as a single unit, in which over two

 hundred thousand tons of solid waste is disposed or incinerated per year.
 Section 3. The board of minerals and environment shall cause any existing large-scale solid waste facility to cease operation unless or until legislative approval as prescribed in this Act has been obtained.
 Section 4. The provisions of this Act are retroactive to July 1, 1989.

2. S.D. Const. art. III, § 1 and S.D.Codified Laws Ann. § 2–1–3 (1992) basically give the public the power, via referendum, to veto legislation passed by the legislature.

process, equal protection and commerce clause violations by the Initiated Measure, and it seeks an adjudication of the validity of the Initiated Measure under both the United States and the South Dakota Constitutions. The complaint makes only one passing reference to any potential referendum, and at the time the complaint was filed, any referendum affecting the Lonetree controversy was only a speculative possibility. The final paragraph of SDDS's complaint states:

> The Initiated Measure has inflicted and will continue to inflict substantial damage and injury to SDDS, the City [Edgemont], the School District [Edgemont School District No. 23-1], the past and future employees of SDDS, and the State of South Dakota, among others.
>
> WHEREFORE, the Plaintiffs request judgment as follows:
>
> 1. For an order of the Court finding and declaring the Initiated Measure to be null and void, of no effect, and in conflict with and in violation of state law and the South Dakota and United States Constitutions.
>
> 2. For an order of the Court finding and declaring SDDS's statutory and constitutional rights to have been violated by the passage of the Initiated Measure.
>
> 3. For an order of the Court finding and declaring that the Initiated Measure is inapplicable to SDDS.
>
> . . . .

SDDS Compl. at ¶ XXIX.

On October 31, 1991, South Dakota Circuit Court Judge Stephen L. Zinter issued a memorandum opinion in *SDDS III. SDDS, Inc. v. State,* Civil Case No. 90-412 (Sixth Judicial Circuit Oct. 31, 1991) (hereinafter *SDDS III* mem. op.). Judge Zinter also issued findings of fact and conclusions of law dated November 20, 1991 (hereinafter *SDDS III* findings). Judge Zinter rejected SDDS's commerce clause and equal protection arguments but did find one narrowly drawn violation of the due process clause. Judge Zinter concluded:

> Section 3 of the Initiated Measure does violate the Due Process Clause of the United States and South Dakota Constitutions

to the extent it required an immediate suspension, without notice or opportunity to be heard, of SDDS' right to operate the Lonetree facility under the September, 1989 permit. The Initiated Measure does not, however, violate the Due Process Clause of the United States and South Dakota Constitutions as it relates to SDDS' December, 1990 renewal permit of (sic) future permits because SDDS does not have a sufficient constitutionally protected property interest to require that due process to which Plaintiffs claim SDDS is entitled.

*SDDS III* mem. op. at 58.

Judge Zinter explained his analysis of the property rights distinction in the following manner. *SDDS III* was a challenge to the constitutionality of the Initiated Measure. At the time the Initiated Measure became law, SDDS held only the One-Year Permit. It had applied for the Five-Year Permit Renewal, but that application had not yet been approved. At the time the Initiated Measure became law, SDDS had an expectation of, but not an entitlement to, the Five-Year Permit Renewal. This expectation did not rise to the level of a constitutionally protected interest. Similarly, SDDS held no constitutionally protected interest in its status as an applicant. Therefore, as of the date the Initiated Measure became law, the extent of SDDS's protected property interest was defined by the One-Year Permit. *See id.* at 30-36.

Judge Zinter's opinion confines itself exclusively to the constitutional validity of the Initiated Measure and does not address the constitutionality of the Referendum. We note the following from Judge Zinter's memorandum opinion:

> The 1991 legislative approval of the Lonetree facility under the 7.75 million ton permit was referred. That legislative approval may now rest in the hands of the electorate at the November 1992 General Election. Such a standardless review by the electorate has been held to violate an *applicant's* due process interests in *GEO-TECH Reclamation Industries, Inc. v. Hamrick,* 886 F.2d 662 (4th Cir.1989).

The constitutionality of the referral is not, however, before this Court.

*Id.* at 38 n. 9 (emphasis in original).

### C. Proceedings in the Federal District Court

On November 5, 1991, SDDS filed the present action in the United States District Court for the District of South Dakota. This action seeks declaratory and prospective injunctive relief and, in addition, recovery under 42 U.S.C. §§ 1983, 1988. SDDS claims that the State, through the Referendum, violated SDDS's rights to procedural and substantive due process, interfered with interstate commerce, and denied SDDS's rights of equal protection, all in contravention of the United States and South Dakota Constitutions.

In the introduction section of the complaint, SDDS explains the role of the Initiated Measure in the saga of events which led up to this litigation. The complaint then states, "[t]he combined effect of the Initiative and the Referendum has proven to be fatal to the proposed Lonetree Facility." SDDS Compl. at ¶ 24. In its substantive claims for relief, however, the complaint only asserts deprivations and constitutional violations caused by the Referendum, not the Initiated Measure. *See id.* at ¶¶ 30, 34, 37, 40.

The State moved for summary judgment on the ground that *SDDS III* had res judicata effect. The district court issued its memorandum opinion on April 6, 1992. *SDDS v. South Dakota,* No. 91–5121 (D.S.D. Apr. 6, 1992). The court rejected the State's res judicata argument and refused to grant summary judgment on that ground. The court, however, determined that *SDDS III* did nevertheless have preclusive effect based on the related doctrine of collateral estoppel, and therefore granted a judgment of dismissal in favor of the State.

The district court noted that *SDDS III* involved due process claims in connection with the Initiated Measure while the present case alleges due process violations with respect to the Referendum. The court then stated that a threshold inquiry in either due process claim is whether SDDS held a constitutionally protected property interest giving rise to due process requirements. The district court wrote:

> [T]his court recognizes that the determination of the constitutional status of plaintiff's property rights in SDDS III is a final adjudication of a threshold issue in this case. Because the parties and facts underlying the state court's decision in SDDS III and the parties and facts of this case are identical, which is to say that plaintiff today holds the same bundle of property rights in the Lonetree Facility as it held during the SDDS III litigation, the SDDS III court's determination that those rights do not rise to the level of a constitutionally protected interest is binding upon this Court.

*Id.* at 7. The district court then concluded that because *SDDS III* had already held that SDDS possessed no constitutionally protected interest, it could not advance its due process arguments in the present action.

Similarly, the district court held that SDDS's equal protection and commerce clause claims "have been previously adjudicated and decided against plaintiff under facts not operatively different from those presented in this case." *Id.* at 8. The court then concluded, "[t]he collateral estoppel effect of the SDDS III court's rulings precludes plaintiff's assertion of constitutional challenges to the referendum process in this case because it has already been determined that plaintiff does not possess the requisite constitutional basis for such an attack...." *Id.* at 9–10. Accordingly, the district court granted a judgment of dismissal based on collateral estoppel.

SDDS appeals from the judgment of dismissal. It argues that the district court erred in holding that *SDDS III* precluded SDDS from presenting its constitutional claims in the federal court.

### II.

In determining *SDDS III* 's preclusive effect, a federal court must give the state court decision the same preclusive effect as would other courts of the state in which the judgment was entered. *See, e.g., Migra v. Warren City Sch. Dist. Bd. of*

*Educ.*, 465 U.S. 75, 81, 104 S.Ct. 892, 896, 79 L.Ed.2d 56 (1984); *Allen v. McCurry*, 449 U.S. 90, 96, 101 S.Ct. 411, 415–16, 66 L.Ed.2d 308 (1980); *Gahr v. Trammel*, 796 F.2d 1063, 1066 (8th Cir.1986). Therefore, South Dakota's state law regarding preclusion applies to this case. In granting judgment of dismissal, the district court determined as a matter of law that SDDS's action was precluded by collateral estoppel. This court reviews a district court's determination of state law de novo. *Salve Regina College v. Russell*, 499 U.S. 225, ——, 111 S.Ct. 1217, 1221, 113 L.Ed.2d 190 (1991).

## A. Res Judicata

The State's motion for summary judgment in the district court was originally based on the ground of res judicata. We briefly address the res judicata question because it is related to the issue at hand, and a discussion of the South Dakota Supreme Court's view of res judicata serves as a stepping stone to our resolution of the collateral estoppel question.

 The doctrine of res judicata typically serves to prevent relitigation of issues actually litigated or which could have been properly raised and determined in a prior action. *See, e.g., Merchants State Bank v. Light*, 458 N.W.2d 792, 794 (S.D.1990); *Black Hills Jewelry Mfg. Co. v. Felco Jewel Indus., Inc.*, 336 N.W.2d 153, 157 (S.D.1983). For declaratory actions, such as *SDDS III*, however, there is preclusive effect only for the matters actually declared. *Carver v. Heikkila*, 465 N.W.2d 183, 186 (S.D.1991). A party who loses a declaratory action is not precluded from pursuing further declaratory relief for matters which could have been raised in the earlier action but were not actually decided. *Id.* Therefore, for res judicata to apply in this case: (1) the issue sought to be litigated in the second suit must have been actually litigated in the earlier suit; (2) there must have been a final, unreversed judgment on the merits in the previous case; and (3) the wrong sought to be redressed must be the same in both actions. *Bank of Hoven v. Rausch*, 449 N.W.2d 263, 265–66 (S.D.1989).

 The district court correctly determined that the third element was not present in this case. In *SDDS III*, SDDS sought a declaration that the Initiated Measure was unconstitutional. In this case, SDDS seeks a declaration that the Referendum is unconstitutional.. These are distinct claims, challenging two different parts of the lawmaking process, and the wrong sought to be redressed is therefore not the same in both actions. A judicial declaration about the constitutionality of the Initiated Measure does not preclude a later challenge to the constitutionality of the Referendum. Res judicata does not apply and the district court was correct to so hold.

## B. Collateral Estoppel

 The district court erred, however, in holding that collateral estoppel served to preclude this cause of action. Collateral estoppel bars relitigation of an essential fact or issue involved in an earlier suit. *Estes v. Millea*, 464 N.W.2d 616, 618 (S.D.1990); *Staab v. Cameron*, 351 N.W.2d 463, 465 (S.D. 1984). Res judicata and collateral estoppel, although similar, are different doctrines. The South Dakota Supreme Court has noted, "[i]t is perhaps easier to visualize the distinction by conceptualizing res judicata as 'claim preclusion' and collateral estoppel as 'issue preclusion.'" *Merchants State Bank*, 458 N.W.2d at 794; *see* Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure* § 4402 (1981). Res judicata, as claim preclusion, is broader than the issue preclusion function of collateral estoppel. *Bank of Hoven*, 449 N.W.2d at 266.

The South Dakota Supreme Court has held that a four-part test must be met before the doctrine of collateral estoppel may be applied: "(1) Was the issue decided in the prior adjudication identical with the one presented in the action in question? (2) Was there a final judgment on the merits? (3) Was the party against whom the plea is asserted a party or in privity with a party to the prior adjudication? (4) Did the party against whom the plea is asserted have a full and fair opportunity to litigate the issue in the prior adjudication?" *Estes*, 464 N.W.2d at 618; *Staab*, 351 N.W.2d at 465.

 We need proceed no further than the first step in the four-part test to hold

that collateral estoppel was not present in this case. In the first step, we must make a "determination of the precise issues" litigated and decided in the state proceeding, *SDDS III*, and the issues raised in this present case. *Melbourn v. Benham*, 292 N.W.2d 335, 338 (S.D.1980). These issues must be identical for collateral estoppel to apply. *Staab*, 351 N.W.2d at 465.

First, as noted earlier, the focus of the dispute in these two cases, while similar, is distinct. In *SDDS III*, SDDS challenged the validity of the Initiated Measure and the state court decided only that specific issue. This present action challenges the validity of the Referendum. These are different contentions. *SDDS III* decided that the Initiated Measure did not violate the equal protection or commerce clauses of the United States and South Dakota Constitutions. It also decided that the Initiated Measure did violate due process with respect to SDDS's One–Year Permit right. However, Judge Zinter's opinion in *SDDS III* explicitly states that it is not deciding the constitutionality of the Referendum. *SDDS III* mem. op. at 38 n. 9. The State admits in its brief that it would have been improper for Judge Zinter to rule on the constitutionality of the Referendum because that issue was not yet ripe. It is precisely the constitutionality of the Referendum which is now the issue in the present case. The district court must examine the Referendum's validity with respect to SDDS's due process, equal protection and commerce clause [3] challenges. The Referendum's impact has never been adjudicated and is therefore not precluded by collateral estoppel.

The State argues that the present action is really an effort to challenge the entire lawmaking process in South Dakota which necessarily encompasses a challenge to the Initiated Measure which has already been adjudicated. We reject the State's reading of

SDDS's complaint as overbroad and unwarranted. The claims in SDDS's complaint in this federal action specifically challenge the constitutionality of the Referendum, not the Initiated Measure. The complaint requests that SDDS be allowed to proceed with the Lonetree project pursuant to its granted permits which are no longer affected by the Initiated Measure. The object of dispute in *SDDS III* was the Initiated Measure, while the focus of attention in this case is the Referendum. These are two separate attacks, and therefore the issues involved in these two actions are simply not identical.

Second, with respect specifically to the due process claims, the district court held that *SDDS III* constituted a final, binding adjudication of SDDS's property rights. The district court held that because *SDDS III* concluded that SDDS's protected property rights only included rights under the One–Year Permit, and because SDDS's property rights had not changed, SDDS was precluded from reasserting any protected property interest. We disagree with the district court's analysis.

In *SDDS III*, the state court was asked to declare whether the Initiated Measure violated SDDS's rights to due process. In his conclusions of law, Judge Zinter quite clearly considered the extent of SDDS's protected property interest as of the date the Initiated Measure became law. *See SDDS III* findings at Conclusions of Law ¶¶ 30, 32, 37, 39. At that time, November 21, 1990, SDDS had applied for the Five–Year Permit Renewal which had not yet been granted. SDDS was continuing to operate under the initial One–Year Permit in accordance with South Dakota law. Judge Zinter held that any expectation SDDS had in permits beyond the existing One–Year Permit did not rise to the level of a constitutionally protected interest. Therefore, his entire decision was predicated on his holding that the protected property

3. With respect to the commerce clause claim, we note that this court, as well as the Supreme Court, has had ample opportunity recently to develop the law regarding waste disposal and the commerce clause. *See generally Chemical Waste Management, Inc. v. Hunt*, —— U.S. ——, 112 S.Ct. 2009, 119 L.Ed.2d 121 (1992); *Fort Gratiot Sanitary Landfill, Inc. v. Michigan Dep't of Natu-*ral *Resources*, —— U.S. ——, 112 S.Ct. 2019, 119 L.Ed.2d 139 (1992); *Philadelphia v. State of New Jersey*, 437 U.S. 617, 98 S.Ct. 2531, 57 L.Ed.2d 475 (1978); *Waste Systems Corp. v. County of Martin*, 985 F.2d 1381 (8th Cir.1993); *In re Southeast Arkansas Landfill, Inc.*, 981 F.2d 372 (8th Cir.1992).

interest SDDS held at the time the Initiated Measure became law was limited to the One–Year Permit.

 For due process purposes, SDDS's protected property interest must be determined as of the effective date of the Referendum which is the alleged constitutional violation in the present lawsuit. *See, e.g., Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972) (holding that constitutional property interests are created by independent sources such as state law); *Goss v. Lopez,* 419 U.S. 565, 573–74, 95 S.Ct. 729, 735–36, 42 L.Ed.2d 725 (1975) (holding that when existing state law has established statutory entitlement, protectible property interest arises). *See also SDDS, Inc. v. State of South Dakota,* 481 N.W.2d 270, 272 (S.D.1992) (holding that effective date of legislation is not until after the referendum process is complete).

SDDS's property interest was defined differently on the effective date of the Referendum than it was on the date of the Initiated Measure. At the time of the Initiated Measure, SDDS had obtained a One–Year Permit and held only an expectation of future permit renewals. By the time of the Referendum, SDDS had in fact secured the Five–Year Permit Renewal from the BME and in addition the legislature had complied with the Initiated Measure by passing S.B. 169. Therefore, the status of SDDS's property interest was different at the time of the Referendum than it was at the time of the Initiated Measure. Whether the later property interest is any greater or any more worthy of constitutional protection is one of the issues that the district court must decide on remand. Surely, however, the status is different than it once was. By adopting a collateral estoppel analysis, the district court assumed that *SDDS III*'s determination of the protectibility of SDDS's property rights at an earlier time was dispositive of the present issue. We hold that it is not. A different due process issue faced the district court than the due process issue which faced the state court in *SDDS III*. Collateral estoppel cannot apply to bar this action.

## III.

The district court erred as a matter of law in holding that *SDDS III* precluded the present federal causes of action by virtue of collateral estoppel. We reverse the decision and remand to the district court for a full explication of SDDS's federal constitutional claims.