679 N.W.2d 497 (2004)
2004 SD 54
The PEOPLE of the State of South Dakota, in the Interest of D.G., Minor Child, Concerning L.G. and N.B.F., Respondents.
No. 22887.
Supreme Court of South Dakota.
Considered on Briefs April 1, 2004.
Decided April 21, 2004.
*499 Lawrence E. Long, Attorney General, David W. Siebrasse, Assistant Attorney General, Pierre, South Dakota, Attorneys for appellee State of South Dakota.
Kelly Marnette, Aberdeen, South Dakota, Attorney for D.G.
Christy Griffin Serr, Aberdeen, South Dakota, Attorney for appellant R.L.
PER CURIAM.
[¶ 1.] Father appeals the termination of his parental rights concerning D.G. We affirm.

FACTS AND PROCEDURE
[¶ 2.] When D.G. was ten days old his mother left him with a relative and went to a bar. Mother was arrested for assault and D.G. was taken into protective custody. R.L., D.G.'s natural father, as determined through subsequent paternity testing, was in the state penitentiary. D.G. was placed with a foster home that contained two of his siblings to which mother had previously terminated her parental rights. Those siblings were adopted through foster placement. D.G. is a special needs child who suffers from reactive *500 airway disease, presumptive reflux and recurrent sinusitis, these conditions culminated in severe asthma.
[¶ 3.] Father was incarcerated for first-degree burglary after he broke into a neighbor's apartment and assaulted him. Father has an extensive criminal record including seventeen prior offenses. Father indicated to the Department of Social Services (DSS) that he was not an enrolled member of any tribe but that he had applied for membership in the Rosebud Sioux Tribe a number of years earlier but had not heard anything. This information was shared with mother. Thereafter, mother voluntarily terminated her parental rights to D.G. She did so with the hope that D.G. would be adopted by the foster placement family and remain with his siblings. Father subsequently learned that his application to the Rosebud Sioux Tribe had been accepted and he was an enrolled member. Father moved to transfer the proceedings to tribal court and mother objected. The trial court determined that because mother had voluntarily terminated her parental rights she had no standing to challenge the transfer motion.
[¶ 4.] Mother then moved for relief from the order terminating her parental rights under SDCL 15-6-60(b) alleging mistake or misrepresentation in her prior termination proceeding. The trial court granted mother's motion and the order terminating her parental rights was vacated. Mother objected to a transfer to the tribe and this matter proceeded in circuit court. The trial court terminated father's parental rights.

ANALYSIS

ISSUE ONE
[¶ 5.] Whether the trial court abused its discretion in vacating mother's voluntary termination of parental rights.

A. Procedural Error
[¶ 6.] Father attempts to appeal from the trial court's decision relieving mother from the order entered in her voluntary termination proceeding (circuit court file 01-018). Father appeared at the hearing on that motion but father did not attempt to appeal from that order. Instead, father attempts to appeal from the order granting mother rule 60(b) relief in this separate abuse and neglect proceeding (circuit court file 01-025). Neither the order, the memorandum opinion, nor the findings of fact and conclusions of law entered on that motion appear in this file or are a part of the record made by father. However, they are included in the appendix to the State's brief. Procedurally, it appears father has failed to perfect his appeal from that order and present it to this Court for review. At any rate, we reach the merits of this argument.

B. Merits of Argument
[¶ 7.] SDCL 15-6-60(b) permits a court, among other things, to relieve a party from a final judgment within a reasonable time for any reason justifying relief. Matter of J.M.J., 368 N.W.2d 602, 607 (S.D.1985) (holding denial of a petition to vacate a termination order was reversible error). "Rule 60(b) is an extraordinary remedy which should be granted only where there has been a showing of exceptional circumstances." Matter of T.M.B., 416 N.W.2d 260, 263 (S.D.1987). Any decision to grant or deny rule 60(b) relief "rests with the sound discretion of the trial court and will not be disturbed on appeal except for abuse." Divich v. Divich, 2002 SD 24, ¶ 8, 640 N.W.2d 758, 761.
[¶ 8.] The trial court found that: (1) mother timely petitioned to vacate the order *501 of termination; (2) mother did not want the tribe involved in any case regarding her children; (3) mother would not have terminated her rights if she had known the tribe would seek jurisdiction over D.G.; (4) mother was mistaken in her beliefs concerning the involvement of the tribe; (5) father told mother prior to her voluntary termination, as well as before the birth of D.G., that he was not enrolled in any tribe; (6) father sent a letter to DSS indicating he was not enrolled in a tribe; and, (7) mother relied upon these statements from father. Based on these findings of fact, the trial court determined that mother was entitled to have the termination order vacated on the grounds of mistake and misrepresentation, and these facts constituted exceptional circumstances justifying rule 60(b) relief.
[¶ 9.] Under these circumstances, the trial court's decision was not an abuse of discretion. Mother had previously objected to transfers of jurisdiction to tribal court when her other children were involved, she was unaware of father's tribal enrollment based on his representations, and she testified she would have objected to the transfer of jurisdiction if she had been aware that was a possibility.[1]

ISSUE TWO
[¶ 10.] Whether the trial court abused its discretion in qualifying an ICWA expert.
[6] [¶ 11.] ICWA provides:
No termination of parental rights may be ordered in such proceeding in the absence of a determination, supported by evidence beyond a reasonable doubt, including testimony of qualified expert witnesses,[2] that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child.
25 USC § 1912(f). Father contends that qualified expert testimony, as mandated by ICWA, was lacking in this case.
[¶ 12.] Qualification of experts and admission of their testimony are matters that fall within the trial court's sound discretion. In re J.L.H., 316 N.W.2d 650, 651 (S.D.1982). A trial court's rulings in this area will be disturbed on appeal only if its discretion was clearly abused. Id.
[¶ 13.] The trial court qualified DSS caseworker Murtaugh as an ICWA expert. Murtaugh had worked with children and families for eighteen years, worked with DSS for six years, a large majority of the families she had worked with were Native American, she has a Native American family of her own, was trained in cultural issues and had previously been qualified as an ICWA expert. Based on these qualifications, the trial court did not abuse its discretion in determining the witness was a qualified expert under ICWA.

ISSUE THREE
[¶ 14.] Whether the trial court erred in finding the requirements of *502 ICWA were met before terminating parental rights.

A. Active Efforts
[¶ 15.] ICWA requires the State to show that it made efforts to prevent the breakup of the Indian family. In this regard, ICWA provides:
Any party seeking to effect a foster care placement of, or termination of parental rights to, an Indian child under state law shall satisfy the court that active efforts have been made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family and that these efforts have proved unsuccessful.
25 USC § 1912(d).
[¶ 16.] The record demonstrates that DSS engaged in "active efforts" designed to prevent the breakup of this Indian family. Father argues that DSS failed to provide active efforts aimed at rehabilitating the family while he was in custody. Clearly, father's incarceration was a major limiting factor for DSS in seeking to return D.G. to his care.
[¶ 17.] A parent's incarceration does not automatically excuse DSS from exercising efforts to return the child. Matter of A.S., 496 N.W.2d 589 (S.D.1993). Yet, it is a matter of fact that a "parent's incarceration limits DSS in its attempts to rehabilitate the family." In re A.S., 2000 SD 94, ¶ 23, 614 N.W.2d 383, 387. This acknowledges the reality that in determining a parent's fitness the fact of incarceration cannot be ignored. Likewise, when assessing what options are available to prepare the parent for the return of a child, incarceration narrows the available options. Father was referred to drug and alcohol classes, parenting courses, independent living and management courses at the penitentiary and received regular contact from the caseworker. Under these circumstances, which included father's incarceration, DSS's efforts were active and reasonable. DSS cannot be faulted for father's criminal choice which limited its ability to return the child.

B. Continued Custody Would Likely Result In Serious Emotional Or Physical Damage To The Child.
[¶ 18.] Child custody proceedings involving the termination of parental rights to an Indian child are subject to specific minimum federal procedures and standards. ICWA provides:
No termination of parental rights may be ordered in such proceeding in the absence of a determination, supported by evidence beyond a reasonable doubt, including testimony of qualified expert witnesses, that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child.
25 USC § 1912(f). Thus, the burden of proof that must be shown is "evidence beyond a reasonable doubt." Id.
[¶ 19.] The trial court found beyond a reasonable doubt that serious emotional or physical harm to the child would result from continued custody with father. The trial court considered father's lengthy criminal record and his incarceration in the penitentiary. The trial court also recognized father's severe alcohol problem that contributed to a number of his criminal activities and found that there is little likelihood he would be able to maintain sobriety in order to care for this child upon his release from the penitentiary. The ICWA expert testified that custody with father would likely result in serious emotional or physical damage to the child. Furthermore, D.G. was a special needs child that needed extra care and monitoring. Based on this, the trial court determined *503 that father was unfit and the child could not wait for him to address his parenting issues and alcoholism. These findings were all made beyond a reasonable doubt and supported by the record. These findings support the termination of parental rights to this Indian child under ICWA and the trial court's determination that the least restrictive alternative commensurate with the best interests of this child was termination of father's parental rights.
[¶ 20.] Affirmed.
[¶ 21.] GILBERTSON, Chief Justice, SABERS, KONENKAMP, ZINTER, and MEIERHENRY, Justices, participating.
NOTES
[1] A parent's timely pre-termination objection survives to prohibit transfer of jurisdiction to the tribe even when a parent's rights are subsequently terminated. In re K.D., 2001 SD 77, ¶ 9, 630 N.W.2d 492, 494. Had mother been aware of father's tribal enrollment she could have simply entered the objection she was entitled to under ICWA 25 USC § 1911(b) before voluntarily terminating her parental rights.
[2] "The use of the plural form, `expert witnesses,' in [] ICWA does not mean, however, that the testimony of more than one qualified expert is required." In re Mahaney, 146 Wash.2d 878, 51 P.3d 776, 786 (2002)(citing In re Dependency of Roberts, 46 Wash.App. 748, 732 P.2d 528 (1987); D.A.W. v. State, 699 P.2d 340, 342 (Alaska 1985)).