2005 SD 104

**Thomas P. WALSH, Sr., Plaintiff and Appellee,**

v.

**Ronald D. LARSEN and Ranae J. Larsen, Defendants and Appellants,**

and

**Lake Veterinary Clinic, Bunker Auto, Inc., Credit Bureau of Watertown, Brookings Federal Bank, Handi-Mart, Inc., Watertown Co–Op Elevator Assn., Midwest Concrete Services, Inc., Business Collection Agency, Inc., First National Bank in Brookings, and Kingsbury County, South Dakota, Defendants.**

No. 23535.

Supreme Court of South Dakota.

Considered on Briefs Aug. 30, 2005.

Decided Oct. 19, 2005.

John C. Quaintance, Quaintance Law Office, P.C., Sioux Falls, SD, for plaintiff and appellee.

Ron R. Volesky, Volesky Law Firm, Huron, SD, for defendants and appellants.

SABERS, Justice.

[¶ 1.]  Ronald and Ranae Larsen (Larsen) filed a Motion to Set Aside a Judg-

ment on a real estate foreclosure action, claiming that Thomas Walsh (Walsh) failed to abide by mandatory mediation requirements of South Dakota law. The trial court denied the motion. Larsen appeals. We affirm.

## Facts

[¶ 2.] Beginning in 1996, Larsen and Walsh entered into a series of transactions in which Larsen borrowed money from Walsh and also purchased from Walsh approximately 165 acres of agricultural land located in Kingsbury County. The land was purchased via a contract for deed.

[¶ 3.] Larsen eventually defaulted on the contract for deed. In March of 2004, Walsh commenced an action of foreclosure on the real estate contract. After filing a Complaint and receiving an Answer, Walsh filed a Request for Admissions and Interrogatories. When Larsen failed to respond by the stated deadline, Walsh filed a Motion for Summary Judgment.[1]

[¶ 4.] At the motion hearing on August 3, 2004, Walsh's attorney, John Quaintance, asked the trial court to enter judgment in favor of Walsh. Quaintance informed Circuit Court Judge Tim Tucker that he and Larsen had reached a preliminary agreement regarding the matter and asked the court to set August 20, 2004, as the final day in which to comply with the contract for deed in order to prevent title

from vesting in Walsh. In response to this, Larsen stated to Judge Tucker:

> There's no question in my mind that we have to retire the debt on the contract for deed, and the 20th is an excellent final date, because it gives us the opportunity to meet this afternoon with the people who—and of course John [Quaintance] knows the people who we're meeting with, and so does Tom [Walsh], and everybody, so we can put this thing together and put it to rest.
>
> No objections whatsoever to that, Your Honor, and thank you.

Judge Tucker agreed with the request and entered a judgment in favor of Walsh on the real estate contract and set the final compliance date as August 20, 2004. On August 23, 2004, the Kingsbury County Clerk of Courts issued a Certificate of Noncompliance indicating that Larsen had failed to pay the debt by the deadline and that the foreclosure action was final.

[¶ 5.] On December 30, 2004, Ron Volesky, Larsen's new attorney, filed a Motion to Set Aside Judgment Pursuant to SDCL 15–6–60(b)(1),(4), and (6).[2] Larsen claimed that the Judgment of Foreclosure should be set aside due to the fact that Walsh failed to request mediation prior to initiating the foreclosure action, as required by SDCL 54–13–10.[3] Judge Tucker denied the motion.

---

1. At the time that the foreclosure action was commenced, Larsen was represented by Curt Ewinger. However, on July 27, 2004, Ewinger petitioned the trial court to withdraw as attorney of record for Larsen and the trial court granted the motion.

2. SDCL 15–6–60(b) provides in part:
   On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons:
   (1) Mistake, inadvertence, surprise, or excusable neglect;
   . . .

   (4) The judgment is void;
   . . .
   (6) Any other reason justifying relief from the operation of the judgment.

3. SDCL 54–13–10 provides:
   A creditor desiring to commence an action or a proceeding in this state to enforce a debt totaling fifty thousand dollars or greater against agricultural land or agricultural property of the borrower or to foreclose a contract to sell agricultural land or agricultural property or to enforce a secured interest in agricultural land or

## Standard of Review

[¶ 6.] "The decision to grant or deny a motion under SDCL 15-6-60(b) rests with the sound discretion of the trial court and will not be disturbed on appeal unless there has been an abuse of discretion." *Porter v. Porter*, 1996 SD 6, ¶ 4, 542 N.W.2d 448, 449 (citing *Hrachovec v. Kaarup*, 516 N.W.2d 309, 311 (S.D.1994)).

[¶ 7.] **Whether the trial court abused its discretion in denying Larsen's Motion to Set Aside Judgment pursuant to SDCL 15-6-60(b).**

[¶ 8.] Larsen appeals contending that the trial court abused its discretion in denying the Motion to Set Aside Judgment. Specifically, Larsen argues that: 1) the mandatory mediation requirements are jurisdictional, therefore the judgment is void; 2) unique circumstances exist to justify relief; and 3) excusable neglect warrants setting aside the judgment.

*1. Whether the mandatory mediation requirements are jurisdictional*

[¶ 9.] It is undisputed that Walsh failed to apply for and receive a mediation release prior to initiating the foreclosure proceedings, as required by SDCL 54-13-10. Furthermore, there is no showing that there were "reasonable grounds to believe that the borrower may waste, dissipate or divert agricultural property or that the agricultural property is in imminent danger of deterioration." *See* SDCL 54-13-10.

[¶ 10.] Larsen argues that the mandatory mediation requirements are jurisdictional in nature and since the requirements were not met prior to initiating the foreclosure action, the matter was not properly before the circuit court. Therefore, Larsen maintains that the Judgment of Foreclosure is void and that the trial court abused its discretion in denying his Motion to Set Aside Judgment of Foreclosure under SDCL 15-6-60(b)(4). The trial court held that "mediation pursuant to SDCL Chapter 54-13 is not jurisdictional and is more akin to an affirmative defense, which must be pled and established."

[¶ 11.] SDCL 15-6-60(b)(4) allows a judgment to be set aside if it is void. However, this Court has held that "[a] judgment is not void merely because it is erroneous. It is void only if the court that rendered it lacked jurisdiction of the subject matter, or of the parties, or if it acted in a manner inconsistent with due process of law." *Estate of Davis*, 524 N.W.2d 125, 128 (S.D.1994) (quoting *Crowley v. Trezona*, 408 N.W.2d 332, 333 (S.D.1987)).

[¶ 12.] Larsen's assertion that the mandatory mediation requirements of SDCL 54-13-10 are jurisdictional is unsupported by any express provision in South Dakota law or by case law. SDCL 54-13-10 is silent as to whether the requirements are jurisdictional in nature. Also, a companion statute appears to contradict the argument

---

agricultural property or pursue any other action, proceeding or remedy relating to agricultural land or agricultural property of the borrower shall file a request for mediation with the director of the agriculture mediation program. No creditor may commence any such action or proceeding until the creditor receives a mediation release as described in this chapter, or the debtor waives mediation or until a court determines after notice and hearing, that the time delay required for mediation

would cause the creditor to suffer irreparable harm because there are reasonable grounds to believe that the borrower may waste, dissipate or divert agricultural property or that the agricultural property is in imminent danger of deterioration. Dismissal of a bankruptcy proceeding, abandonment by a bankruptcy trustee, release or relief from a bankruptcy stay, or release or termination of a receivership proceeding shall have the effect of a mediation release.

that the mediation provisions of SDCL Chapter 54–13 are jurisdictional. SDCL 54–13–13 provides that when the *borrower* requests mediation, "[n]either the borrower [nor] the creditor may be required to attend any mediation meetings" and "[p]articipation in mediation . . . is not a prerequisite to or bar to the commencement of an action of legal. proceedings by the borrower or the creditor." [4]

[¶ 13.] While this issue has not been addressed in South Dakota, a federal district court in Iowa addressed the issue of whether mandatory mediation requirements are jurisdictional in the case of *Rutter v. Carroll's Foods of the Midwest, Inc.*, 50 F.Supp.2d 876 (N.D.Iowa 1999). In *Rutter*, Iowa state law required a mandatory mediation release to be obtained before proceeding with any disputes involving "farm residents." *Id.* at 878–79. The federal district court held that Iowa's mandatory mediation requirements are more akin to "condition[s] precedent" to suit, not jurisdictional prerequisites. *Id.* at 882–83. In reaching this conclusion, the court noted that it could not find a court "of any jurisdiction that has passed on the question of whether obtaining a mediation release, required by statute, is a jurisdictional prerequisite or merely a condition precedent to suit that may be curable once suit is filed." *Id.* at 882. Therefore, the court relied on several Eighth Circuit Court of Appeals decisions to draw an analogy to base its holding and stated that:

> [T]he Eighth Circuit Court of Appeals has frequently held an analogous requirement—an admittedly *roughly* analogous requirement—that a plaintiff first obtain a right-to-sue letter from the EEOC or appropriate agency before pursuing a civil suit alleging employment discrimination in violation of Title VII was only a "condition precedent" to suit, not a "jurisdictional prerequisite," and hence could be cured *after* suit was filed. *See Whitmore v. O'Connor Mgmt., Inc.*, 156 F.3d 796, 800 (8th Cir. 1998) (holding, by analogy to Title VII cases, that the Missouri courts would consider a right-to-sue letter as a condition precedent, not a jurisdictional prerequisite, to suit under the Missouri Human Rights Act (MHRA), and the absence of such a letter, as in Title VII cases, was a defect curable after suit was filed); *Jones v. American State Bank*, 857 F.2d 494, 499–500 (8th Cir. 1988) (the receipt of a right-to-sue notice is not a jurisdictional prerequisite, but rather is a condition precedent to filing a Title VII claim, curable after the action has commenced).

*Rutter*, 50 F.Supp.2d at 882 (emphasis in the original).[5]

---

4. SDCL 54–13–13 provides:

   A borrower may request mediation of any type or amount of indebtedness by applying to the director of the agriculture mediation program. The director of the agriculture mediation program may make the appropriate mediation request forms available for such purpose. The director of the agriculture mediation program may follow the same procedure as for mandatory mediation. Neither the borrower nor the creditor may be required to attend any mediation meetings under this section. Failure to attend mediation meetings or to participate in mediation under this section does not affect the rights of a borrower or a creditor in any manner. Participation in mediation under this section is not a prerequisite to or a bar to the commencement of an action of legal proceedings by the borrower or the creditor. No mediation release may be issued unless the borrower and creditor agree in writing.

5. The *Rutter* court further explained its reasoning, stating that:

   The court notes, in aid of the analogy, that one of the reasons for the administrative exhaustion requirement under Title VII is to allow the EEOC or other agency to at-

[¶ 14.] Based on the above, it has not been shown that the mandatory mediation requirements of SDCL 54–13–10 are jurisdictional in nature.

### 2. Whether unique circumstances exist justifying relief

[¶ 15.] Alternatively, Larsen argues that unique circumstances exist justifying relief under SDCL 15–6–60(b)(6). Larsen claims that he was denied his due process rights pursuant to state law and that constitutes "a showing of exceptional circumstances," which justifies relief.

[¶ 16.] Walsh maintains that the judgment was entered pursuant to and procedurally in compliance with a claim predicated on SDCL Chapter 21–50 (Foreclosure of Real Estate Contracts) and that the only relevant "exceptional circumstances" weigh in favor of Walsh. Judge Tucker agreed and held that "unique circumstances exist here in that Defendant Ronald K. Larsen admitted the amount of debt for which Judgment was entered and agreed to entry of the Judgment."

[¶ 17.] Based on the fact that Larsen admitted the amount of debt owed on the contract for deed, expressed to the trial court that he had "[n]o objections whatsoever" to the entry of the judgment, and first raised the issue of mandatory mediation as a defense approximately four months after the judgment was entered, we are not persuaded by Larsen's argument that exceptional circumstances exist justifying relief from the operation of the judgment.

### 3. Whether excusable neglect warrants setting aside the judgment

[¶ 18.] Finally, Larsen argues that his original trial counsel negligently failed to defend against the foreclosure action in not pleading the mandatory mediation requirement as a defense. He contends that his reliance on his attorney constitutes "excusable neglect" on his part and therefore relief from the Judgment of Foreclosure should have been granted pursuant to SDCL 15–6–60(b)(1).

[¶ 19.] This Court has held that:

Although no guidelines or standards exist to ascertain "excusable neglect," we have generally held that it "must be of a nature that would cause a reasonably prudent person under similar circumstances to act similarly." Whether excusable neglect or mistake occurred must be judged on the unique facts of each case. The burden of establishing these exceptions rests with the party asserting them.

*Strutton v. SDG Macerich Properties LP,* 2005 SD 44, ¶ 10, 695 N.W.2d, 242, 244 (internal citations omitted).

[¶ 20.] The record does not support Larsen's claim that failure to plead the mandatory mediation requirements as a defense was due to the negligence of his original trial counsel, Curt Ewinger. In fact, Ewinger stated in his Motion to Withdraw as Larsen's attorney that the reason he desired to withdraw was because of Larsen's "lack of cooperation in their defense." He alleged that Larsen failed to provide him with the information necessary to respond to the interrogatories and

---

tempt mediation of the dispute before suit is brought. 42 U.S.C. § 2000e–5(b). Although the Iowa Supreme Court, in *Swanger v. Iowa,* 445 N.W.2d 344 (Iowa 1989), required strict adherence to administrative procedures stated in IOWA CODE CH. 25A prior to filing a tort claim against the state as a jurisdictional matter, that decision was founded on the fact that the state only consents to waive its immunity to suit—a jurisdictional matter—if the requirements of the Iowa Tort Claims Act have been met. *See Swanger,* 445 N.W.2d at 346–47.

keep in contact with him. Furthermore, despite the withdrawal of Ewinger, it appears that Larsen chose to remain unrepresented at the motion hearing on August 3, 2004 and in his subsequent negotiations with Quaintance.[6]

[¶ 21.] Based on the above, it has not been shown that the trial court abused its discretion in denying Larsen's Motion to Set Aside Judgment pursuant to SDCL 15–6–60(b).

[¶ 22.] We affirm.

[¶ 23.] GILBERTSON, Chief Justice, and KONENKAMP, ZINTER, and MEIERHENRY, Justices, concur.

---

**6.** When Judge Tucker asked Larsen during the motion hearing if he had any comments to make, Larsen replied:

Your Honor, just that I consider Mr. Walsh and Mr. Quaintance still friends. I mean we have been—we have known each other for a long time. We had some problems that have arisen, we know what we have to do, and the attorney who withdrew today had a simple task to undertake, and of course now when attorneys are dealing they don't like to talk to the people they don't represent in-between, *but with the withdrawal of the attorney from Aberdeen, then, you know, John [Quaintance] and I had the opportunity to talk and converse, we got a meeting this afternoon to set this up.* (emphasis added).