#23921, 23986-aff in pt, rev in pt & rem-ERICKSON, Circuit Judge

**2007 SD 11**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

#23921

| | |
|---|---|
| LEAH D. GLOVER, | Plaintiff, |
| v. | |
| JERITY E. KRAMBECK, | Defendant and Appellant, |
| v. | |
| JOSHUA MACER, | Defendant and Appellee. |

* * * *

APPEAL FROM THE CIRCUIT COURT
OF THE FOURTH JUDICIAL CIRCUIT
MEADE COUNTY, SOUTH DAKOTA

* * * *

HONORABLE JEROME A. ECKRICH
Judge

* * * *

#23986

| | |
|---|---|
| JERRY A. KRAMBECK, | Plaintiff, |
| and | |
| JERITY E. KRAMBECK, | Plaintiff and Appellant, |
| v. | |
| JOSHUA MACER, | Defendant and Appellee. |

* * * *

APPEAL FROM THE CIRCUIT COURT
OF THE FOURTH JUDICIAL CIRCUIT
BUTTE COUNTY, SOUTH DAKOTA

* * * *

HONORABLE JOHN W. BASTIAN
Judge

* * * *

| | |
|---|---|
| KAREN PAIGE HUNT and THOMAS E. BRADY of Brady Pluimer Spearfish, South Dakota | Attorneys for appellant |
| THOMAS G. FRITZ and CATHERINE M. SABERS of Lynn, Jackson, Shultz & Lebrun Rapid City, South Dakota | Attorneys for appellee Joshua Macer. |

* * * *

CONSIDERED ON BRIEFS
ON AUGUST 28, 2006

OPINION FILED 1/17/07

#23921, 23986

ERICKSON, Circuit Judge

[¶1.]     This decision consolidates two separate appeals from two different cases in adjoining counties. The cases were considered by different circuit court judges and arose from a single car accident. A Meade County case involving Jerity Krambeck's (Krambeck) insurance carrier was settled and dismissed with prejudice. When counsel for a Butte County case brought by Krambeck moved to set aside that dismissal, the motion was denied. The Butte County case was then dismissed on the grounds of res judicata. We affirm the denial of the motion to set aside the Meade County dismissal and reverse and remand the Butte County dismissal granted on the grounds of res judicata.

FACTS

[¶2.]     On October 9, 2000, Krambeck was driving a car owned by her father on I-90 with passengers Leah Glover (Glover) and Josh Macer (Macer). Macer grabbed the steering wheel from the backseat causing the vehicle to go into the right-hand ditch. Krambeck attempted to correct the vehicle but lost control and the car rolled over.

[¶3.]     In September 2003 Glover sued both Krambeck and Macer in Meade County asserting their joint negligence caused her personal injuries. At the time the lawsuit was filed, Krambeck was in army basic training. She waived her right to stay the proceedings and the case advanced. Krambeck's insurance carrier hired attorney Reed Rasmussen (Rasmussen) to represent her interests under the insurance policy. Rasmussen communicated with Krambeck's mother concerning the case. Krambeck and Macer filed cross-claims against each other for contribution and indemnity.

[¶4.]	That same fall attorney Thomas Brady (Brady) brought an action against Macer in Butte County on behalf of both Krambeck and her father for personal injury and damages to her father's automobile. Krambeck herself had no contact with attorney Brady until May 2005.

[¶5.]	Krambeck was discharged from the army in February 2004. She immediately began communicating with Rasmussen. In a deposition on June 1, 2004, involving the Meade County case, Krambeck answered questions concerning her personal injuries although no claim for them had been made in the action. The Meade County case was settled and on June 24, 2005, an order was entered dismissing the action on its merits with prejudice.

[¶6.]	Four days later attorney Brady learned of the dismissal of the Meade County action. Surprisingly this was the first time either Brady or Rasmussen was made aware of the other's case.[1]

[¶7.]	One month later Macer moved to dismiss the Butte County case citing the dismissal of the Meade County case and arguing that the dismissal was res judicata. On June 28, 2005, Krambeck moved to set aside the dismissal of the Meade County case by seeking relief from the judgment under SDCL 15-6-60(b). This motion was denied. Thereafter, Macer's motion to dismiss the Butte County case was granted. Krambeck appeals both decisions raising the following issues:

> Whether the trial court in Meade County abused its discretion when it denied the motion for relief under SDCL 15-6-60(b).

---

1.	It is surprising because this is an automobile accident case involving the South Dakota Financial Responsibility law mandating liability coverage for all drivers. It also involves claims which may put the insurance carrier's attorney in conflict with the customer and require the hiring of independent counsel.

Whether the trial court in Butte County erred in granting the defendant's motion to dismiss based on res judicata.

ANALYSIS AND DECISION

ISSUE ONE

[¶8.]     **Did the trial court in the Meade County case abuse its discretion in denying Krambeck's motion for relief under SDCL 15-6-60(b)?**

[¶9.]     "'The decision to grant or deny a motion under SDCL 15-6-60(b) rests with the sound discretion of the trial court and will not be disturbed on appeal unless there has been an abuse of discretion.'" Lowe v. Schwartz, 2006 SD 48, ¶ 8, 716 NW2d 777, 779 (quoting Walsh v. Larsen, 2005 SD 104, ¶ 6, 705 NW2d 638, 641). "An abuse of discretion consists of 'a discretion exercised to an end or purpose not justified by, and clearly against, reason and evidence.'" Schwartz v. Palachuk, 1999 SD 100, ¶ 16, 597 NW2d 442, 446 (quoting Hrachovec v. Kaarup, 516 NW2d 309, 311 (SD 1994)). The test for finding an abuse of discretion is "'whether we believe a judicial mind, in view of the law and the circumstances, could reasonably have reached the conclusion.'" *Hrachovec, supra* at 311 (quoting Dacy v. Gors, 471 NW2d 576, 580 (SD 1991)).

[¶10.]     A motion under SDCL 15-6-60(b) can be granted only when exceptional circumstances exist. Interest of D.G., 2004 SD 54, ¶ 7, 679 NW2d 497, 500. "'The purpose of Rule 60(b) is to preserve the delicate balance between the sanctity of final judgments and the incessant command of a court's conscious that justice be done in light of all the facts.'" Reaser v. Reaser, 2004 SD 116, ¶ 16, 688 NW2d 429, 434 (quoting Divich v. Divich, 2002 SD 24, ¶ 8, 640 NW2d 758, 760).

[¶11.]     Macer contends that Krambeck's motion for relief was not made in a reasonable amount of time as required by the statute.  Under the circumstances of this case, SDCL 15-6-60(b) allowed the motion to be made within one year after the order of dismissal was entered.  The motion for relief was filed approximately five months after the dismissal was ordered.  The trial court did not consider this argument in its decision and nothing in the record indicates that the delay was unreasonable.  Macer also contends that the five month delay was unreasonable because there was a lack of compelling factors justifying such a delay.  However, compelling factors are not a requirement.  In Rogers v. Rogers, 351 NW2d 129 (SD 1984) this Court implicitly upheld a six month delay without any evidence of compelling factors (cited with approval in Clarke v. Clarke, 423 NW2d 818, 821 (SD 1988)).

[¶12.]     Krambeck argues that the trial court erred in denying her relief under SDCL 15-6-60(b)(1) citing mistake, inadvertence or excusable neglect.  Her argument is that her presence in basic training at the beginning of the two lawsuits, her limited involvement with them during that time, her parents' lead in prosecuting the lawsuits, and her young age and lack of experience with lawsuits all contributed to her mistake, inadvertence or excusable neglect in failing to inform either lawyer of the existence of two lawsuits and her lack of understanding of the full effect of settling the Meade County case.

[¶13.]     Under these conditions it was reasonable for the trial court to find that no exceptional circumstances existed.  The trial court noted that Krambeck knew of the existence of both lawsuits and the representation by two lawyers, that she was a

-4-

competent adult and that she had the means to make one attorney aware of the other.

[¶14.]     Krambeck's service in the armed forces is indeed honorable, and it is understandable that while she was serving her communication with the civilian world was more difficult.  However, she waived her right to be relieved from this hardship.  Furthermore, she was discharged in February 2004 and the case was not settled until January 24, 2005.  During this eleven month period she communicated with attorney Rasmussen about the Meade County case several times.  Additionally, she was aware of attorney Brady's representation in the Butte County case.  Despite her knowledge, she gave no explanation for not communicating with Brady until May 2005 or for not making Rasmussen aware of the Butte County case or of Brady's involvement.

[¶15.]     The trial court's denial of the motion to set aside the Meade County dismissal is affirmed.

ISSUE TWO

[¶16.]     **Did the trial court in the Butte County case err in granting Macer's motion to dismiss based on res judicata?**

[¶17.]     The applicability of the doctrine of res judicata is a question of law examined de novo.  Wells v. Wells, 2005 SD 67, ¶ 11, 698 NW2d 504, 507.  "'The doctrine of res judicata serves as *claim* preclusion to prevent relitigation of an *issue actually litigated or which could have been properly raised and determined* in a prior action.'"  Barnes v. Matzner, 2003 SD 42, ¶ 16, 661 NW2d 372, 377 (quoting Black Hills Jewelry Mfg. v. Felco Jewel Ind., 336 NW2d 153, 157 (SD 1983) (emphasis in the original).

[¶18.] "'For purposes of res judicata, a cause of action is comprised of the facts which give rise to, or establish, the right a party seeks to enforce. . . . [T]he test is a query into whether the wrong sought to be redressed is the same in both actions.'" *Id.* (ellipsis in original).

[¶19.] The Butte County trial court ruled that while Krambeck's father could pursue his claim for property damage, Krambeck could have sought recovery for her damages by way of a cross-claim in the Meade County action pursuant to SDCL 15-6-13(g) and SDCL 15-6-18(a). The court then ruled that Krambeck was barred from raising the issue in a separate action. Krambeck argues that this holding makes all cross-claims compulsory contrary to the permissive language in SDCL 15-6-13(g) (cross-claim against co-party) stating:

> A pleading *may* state as a cross-claim any claim by one party against a co-party arising out of the transaction or occurrence that is the subject matter either of the original action or of a counterclaim therein or relating to any property that is the subject matter of the original action. Such cross-claim may include a claim that the party against whom it is asserted is or may be liable to the cross-claimant for all or part of a claim asserted in the action against the cross-claimant. (emphasis added).

[¶20.] Krambeck urges this Court to follow the position recently adopted by the Supreme Court of Missouri in Hemme v. Bharti, 183 SW3d 593 (Mo 2006). The Missouri Supreme Court, presented with facts almost identical to those in this case, held that denying a second cause of action was contrary to the Missouri Rules of Civil Procedure. *Id.* at 596-599. Those procedural rules are almost identical to those in South Dakota. In the *Hemme* case, as in our case, the defendants were represented by counsel provided by their insurer. The defendant was left to find alternative

counsel to proceed on related claims which were outside the scope of the insurance contract. *Id.* at 600.

[¶21.] The Missouri Supreme Court ruled that "if the compulsory counterclaim rule were to be applied to the cross-claim in the original case, the Court would impose on counsel the obligation of representing its insured in her claim for injuries or of informing her to retain separate counsel to represent her in the counterclaim to the cross-claims." *Id.* The Court further observed that "[t]his would add a layer of complexity and dysfunction in the original lawsuit that is not appropriate." *Id.*

[¶22.] We agree with the Missouri Supreme Court. "A cross-claim, under this rule, is always permissive and never compulsory." *Id.* at 596. Therefore, Krambeck was not required to make a claim for her own injuries in the Meade County lawsuit commenced by Glover. Krambeck's subsequent lawsuit was not barred. The trial court judgment in the Butte County case is reversed, and the case is remanded.

[¶23.] GILBERTSON, Chief Justice and MEIERHENRY, Justice concur.

[¶24.] KONENKAMP and ZINTER, Justices, concur specially.

[¶25.] ERICKSON, Circuit Judge, for SABERS, Justice, disqualified.

ZINTER, Justice (concurring specially).

[¶26.] The circuit court in Butte County dismissed Krambeck's claim for personal injury because she failed to include it with the cross-claims for indemnity and contribution that Krambeck and Macer asserted against each other as co-defendants in the Meade County suit. Because Krambeck could have asserted her personal injury claim with her cross-claim in the Meade County suit, the circuit court in Butte County concluded that res judicata precluded Krambeck from subsequently

asserting that claim. Today, this Court reverses. In doing so, the Court discusses res judicata but ultimately reverses based on the "compulsory counterclaim rule." *Supra,* ¶¶21-22. I write to explain the relationship between res judicata and the compulsory counterclaim rule. I also write to clarify the circumstances under which omitted cross-claims are barred.

[¶27.]     When applied to permissive cross-claims, the "compulsory counterclaim rule" is "considered a codification[2] of the principles of claim preclusion, i.e., res judicata, and issue preclusion, i.e., collateral estoppel." Hemme v. Bharti, 183 SW3d 593, 599 (Mo 2006) (citation omitted). This Court has also recognized this relationship. This Court noted that under the compulsory counterclaim rule, "res judicata will bar a claim. . . only if the claim should have been properly raised as a counterclaim in [the prior proceeding]." Sioux Enterprises, Minnesota v. Tri-State Refining Co., 456 NW2d 774, 778 (SD 1990) (three justices, concurring specially). Although the elements of these doctrines are not identical: "If the compulsory

2.     SDCL 15-6-13(a) provides:

> A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction. But the pleader need not state the claim if: (1) At the time the action was commenced the claim was the subject of another pending action; or (2) The opposing party brought suit upon his claim by attachment or other process by which the court did not acquire jurisdiction to render a personal judgment on that claim, and the pleader is not stating any counterclaim under § 15-6-13; or (3) If the claim is not one over which the court would have jurisdiction if brought as an original action.

counterclaim rule does not apply, neither does claim preclusion (res judicata)." *Hemme*, 183 SW3d at 599. Therefore, although this Court ultimately applies the compulsory counterclaim rule, *see supra* ¶¶20-22, by adopting *Hemme,* we have implicitly analyzed this issue as a matter of res judicata.[3]

[¶28.]     I also write to clarify one portion of our opinion. The Court notes that under SDCL 15-6-13(g), cross-claims are "'always permissive and never compulsory.'" *Supra*, ¶22 (quoting *Hemme*, 183 SW3d at 596). From this, the Court concludes that a claimant like Krambeck was not required to assert a personal injury claim in the

---

3.     Some courts treat the underlying basis for the compulsory counterclaim rule as matters of waiver or estoppel, rather than res judicata. *See* 6 Charles Alan Wright, Arthur R. Miller, and Mary Kay Kane, *Federal Practice and Procedure*, §1417 (1990); 3 James Moore, *Moore's Federal Practice* §13.14[1] (3d ed 2006). It should also be pointed out that some respected commentators consider waiver or estoppel to be better underlying theories for barring omitted claims in cases like this where an insurance company has controlled the defense of the first action.

> In many ways [waiver or estoppel] provides a more apposite and useful approach to the problem of omitted counterclaims than does the doctrine of claim preclusion. For example, it affords a means of extricating a defendant who has not knowingly refrained from asserting his claim from the rigors of the compulsory counterclaim rule; this type of safety valve may be particularly important when an insurance company has controlled the defense of the first action and the actual defendant has not had a realistic opportunity to assert his claim.

Wright, §1417. Some courts also prefer the estoppel or waiver analysis: "In most instances, application of either res judicata or waiver principles will yield the same result, but, . . . we prefer the flexibility of a waiver analysis to the more rigid rules applicable to res judicata." Kane v. Magna Mixer, Co., 71 F3d 555, 562-563 (6thCir 1995).

Ultimately, the outcome of this case is not dependent upon this distinction. Therefore, we leave the precise underlying theory for another day.

first litigation. *Id.* Although this result is correct, the Missouri Supreme Court rejected this analysis, noting "it has the beauty of simplicity and works in this case, [but] this analysis does not consistently yield the correct answer." *Hemme,* 183 SW3d at 596. The Court further explained that some permissive cross-claims may be barred by the compulsory counterclaim/res judicata rule:

> The counterclaim rule is not limited to claims by a defendant against a plaintiff-Rule [13(a)] does not use those labels. So it is possible for co-parties in some circumstances to be "opposing parties," for example, when one co-party brings a claim for its own damages against another co-party. In that circumstance, they would be opposing parties-though both originally are co-defendants-and, thus, would be subject to the compulsory counterclaim [and res judicata rules].

*Id.* As other courts have also explained, "once a cross claim has been pleaded, the cross-claimant becomes an opposing party, and '[t]he party against whom [the] cross-claim is asserted must plead as a counterclaim any right to relief that party has against the cross-claimant that arises from the same transaction or occurrence.'" Earle M. Jorgenson Co., v. T.I. United States, Ltd., 133 FRD 472, 475 n10 (EDPa 1991)(quoting Arthur F. Greenbaum, *Jacks or Better to Open: Procedural Limitations on Co-Party and Third-Party Claims*, 74 MinnLRev 507, 551 (Feb 1990)) (citing Rule 13(a)).

[¶29.]      In my view, the bar to subsequently submitting omitted cross-claims is dependent upon the nature of the claim. The assertion of a substantive cross-claim by one co-defendant triggers these preclusive rules while procedural claims, such as those for contribution and indemnity, do not. Cross-claims for contribution and indemnity among co-defendants are considered procedural, therefore, they do not

make co-parties adverse for purposes of applying res judicata and the compulsory counterclaim rule. *Hemme*, 183 SW3d at 598 (citing Augustin v. Mughal, 521 F2d 1215 (8thCir 1975) (applying both Missouri and federal law); Kirkcaldy v. Richmond Cty. Bd. of Education, 212 FRD 289 (MDNC 2002); Rainbow Mgmt. Group, Ltd. v. Atlantis Submarines Hawaii, L.P., 158 FRD 656 (DHaw 1994); Answering Serv., Inc. v. Egan, 728 F2d 1500 (DC 1984)).

[¶30.]     Only substantive cross-claims are adequately mature to make the parties sufficiently adverse to be "opposing parties" within the meaning of the compulsory counterclaim (and res judicata) rule. Hall v. General Motors Corp., 647 F2d 175, 184, 207 USAppDC 350, 359 n38 (DCCir 1980) (reasoning "contribution and indemnity claims are contingent on the outcome of the main claim and therefore do not fit the FedRCivP 13(a) compulsory counterclaim formula") (citing Chicago Freight Car Leasing Co. v. Martin Marietta Corp., 66 FRD 400 (NDIll 1975); Hartford Accident & Indemnity Co. v. Levitt & Sons, Inc., 24 FRD 230 (EDPa 1959)). This is consistent with our reasoning in *Sioux Enterprises* recognizing that "'a party need not assert a counterclaim that has not matured at the time [that party] serves [the] pleading.'" 456 NW2d at 778 (Sabers, J., concurring) (quoting Staab v. Skoglund, 89 SD 470, 478, 234 NW2d 45, 49 (1975)). After analyzing a number of decisions on this issue, the District Court in Hawaii adopted what appears to be the most practical approach:

> Co-parties become opposing parties within the meaning of
> [the compulsory counterclaim rule] after one such party
> pleads an initial cross-claim against the other. . .[H]owever,
> . . . this rule should be limited to situations in which the
> initial cross-claim includes a substantive claim (as opposed
> to merely a claim for contribution and indemnity). The

-11-

> reason for this modification is that an unlimited rule may
> actually increase the amount or complexity of litigation.

*Rainbow Management Group*, 158 FRD at 660. This same "substantive" limitation should be applied to claims that were omitted by the party filing the first cross-claim. *See Hemme*, 183 SW3d 593.

[¶31.]      In the instant case, the cross-claims in the Meade County litigation asserted between Krambeck and Macer were procedural, unmatured claims for contribution and indemnity. For this reason, the compulsory counterclaim rule did not preclude the bringing of the subsequent, substantive claim for personal injuries. Therefore, the judgment dismissing the Butte County case must be reversed and remanded.

[¶32.]      KONENKAMP, Justice, joins this special writing.